BARRY, Judge.
This action arose out of a contract wherein plaintiff, Honeywell, Inc., agreed to provide burglar alarm equipment and services to defendant, Courtesy Discount House, Inc. The defendant failed to make specified payments and plaintiff filed suit seeking all sums due for the term of the contract. The defendant answered that the contract had been breached and the Trial Judge agreed, finding that Honeywell failed to supply the services which were outlined in the agreement.
Plaintiff appeals urging that the trial court erred in holding that plaintiff’s burglar system did not function properly; alternatively, that the defendant failed to notify plaintiff of any deficiencies in the system; and defendant had no basis in law to withhold payments due under the contract.
On May 15, 1979 plaintiff and defendant signed an agreement for the lease of burglar alarm equipment, including installation and specific protection services. After the system was installed it did not function properly and a new system was put in on June 5, 1979. Defendant agreed to pay an installation fee of $1,649.50 plus a monthly charge of $105.40 for “ongoing monitoring and/or service” for two years. The schedule of protection contained the following provisions:
“Contractor will service and maintain all equipment during terms of this agreement.
Immediate guard response.
Signal in to Honeywell central station, with direct line to St. Bernard Parish Sheriff’s office.
Emergency service available 24 hours per day, 7 days per week.”
Plaintiff’s installation manager, Wayne Fradella, testified the first system was functional but had a few “bugs.” He dealt with Robert Pierce, president of the defendant corporation, who negotiated the second contract which specified more protection and different equipment at additional costs. He said Pierce wanted the added protection in order to detect someone on the premises as soon as possible, and the monthly charge was for monitoring to provide that service. Fradella stated after the second installation Pierce made only one complaint to him which concerned a siren that was relocated. On cross examination he said the 24 hour surveillance meant watching a computer for an alarm in order to notify the police. He said “immediate guard response” meant the first available Honeywell man would take the call “instantly.” Fradella admitted the defendant’s alarm went off sporadically without cause and it was Honeywell’s responsibility to adjust and repair the system. He also said that “signal in to Honeywell central station” meant the Sheriff was to be notified whenever the alarm sounded.
Pierce testified after the first system was installed there were a number of false alarms. He said the second system continuously failed and on several occasions there was no response from the Sheriff’s office. Pierce identified three employees of Honeywell he complained to on numerous occasions and he advised them payment would not be made until the system functioned properly. He also said Honeywell never sent a guard in response to an alarm and as a result he was forced to spend nights on the premises. The contract provided for emergency service 24 hours per day, 7 days a week but Pierce said there were times when the system didn’t work for days. He added: “I got service half of the time in twenty-four hours, but, very, very seldom it was ever under six hours. And I ran into days occasionally.” Pierce stressed he would not have signed the contract if he had known Honeywell could not provide immediate guard response, emergency service, and the other items specifically added to the contract at his request. Pierce testified from informal notes which showed dates of numerous false alarms, no responses from plaintiff, and instances when plaintiff did not react until days later.
To substantiate the false alarms defendant called a radio dispatcher for the Sheriff’s office who identified log sheets which reflected numerous entries reflecting alarms from defendant’s property. The dis *224 patcher said there were many complaints, sometimes two or three times a night, that the alarm was sounding and it occurred so often her office stopped recording the calls. Another defense witness, a supervisor in the Sheriff’s office, said his office had so much trouble with the alarm going off he instructed the radio operator not to accept calls in order “not to waste time going back over there.”
In succinct and cogent written reasons the Trial Judge said:
“The Court was impressed with the testimony of Mr. Pierce. His answers were detailed and specific. He was definite as to not entering into the contract without the specific services of immediate guard response; signal in the Honeywell Central Station with direct line to the Sheriff’s Office; and emergency service available 24 hours per day, 7 days a week.
His testimony that the plaintiff failed to live up to the specific terms of the agreement was impressive, largely uncontra-dicted and supported by the testimony of two St. Bernard Parish Sheriff’s Office employees.
In addition, plaintiff failed to call, either in chief or rebuttal, the individual who wrote and negotiated the contract with Mr. Pierce, in regards to Pierce’s interpretation of the agreement.
It was the opinion of the Court that the defendant had carried the burden of proving by a preponderance of the evidence that Honeywell, Inc., failed to perform the object of the contract and did breach the contract by failing to supply the service called for by the terms of the agreement; and therefore payment is not required under our law.”
Plaintiff’s first contention is that the Trial Judge incorrectly found that the burglar alarm system was so defective it was incapable of functioning properly. Defendant argues, and we agree, that this assertion does not reflect the reasons given by the trial court which specified failure to perform the object of the contract, namely, the protection services. Our reading of the record indicates that the alarm system was defective but that was not the basis for the judgment.
Plaintiff’s next assignment is also without merit. It argues even if the system was not fully functional, defendant was obligated to give written notice under the following lease provision:
Any claim by Subscriber of improper installation or a defect in the system must be given in writing to the Contractor within (30) thirty days from the installation completion. Otherwise all such claims shall be deemed waived.
Plaintiff cites Louisiana Power & Light Co. v. Mecom, 357 So.2d 596 (La.App. 1st Cir. 1978) wherein a similar waiver provision was enforced. However, that case provided for an automatic extension of electrical service unless the contract was terminated in writing prior to its expiration. Those facts are dissimilar from this case and not applicable. Further, this provision applies to improper installation or a defect in the system and in no way relates to the lower court’s finding that plaintiff failed to provide the enumerated protection services.
Finally, appellant asserts under the law of lease the lessee (defendant) could not refuse to make payments because LSA-C.C. Art. 2694 provides that a lessee is authorized to make necessary repairs (if the lessor refuses) and deduct the cost from the rent. Alternatively, plaintiff asserts the lessor’s other option was to sue for dissolution of the lease, but withholding payments was illegal. Lassen v. Otalvaro, 391 So.2d 1378 (La.App. 4th Cir. 1980). Defendant responds that plaintiff was aware that the system was malfunctioning and points to a provision in the lease whereby the lessee “... agrees not to tamper with, alter, adjust, add to, disturb, injure or remove or otherwise interfere with installed equipment ...
Hence, the lease prevented defendant from making the repairs which plaintiff claims it should have made. Whether defendant should have sued for dissolution of the lease is moot since plaintiff filed this suit.
*225 In our review of these facts the manifest error rule is not applicable because this case relates to preponderance of the evidence, rather than credibility of witnesses. See Blue Streak Enterprises v. Cherrie, 263 So.2d 734 (La.App. 4th Cir. 1972). We feel the defendant clearly exceeded its burden of meeting the preponderance test because the evidence is overwhelming that plaintiff failed to perform under the contract.
Accordingly, the judgment appealed from is affirmed with plaintiff/appellant to pay all costs of appeal.
AFFIRMED.