496 So.2d 509 (1986)
Lennie ANGELLE
v.
ENERGY BUILDERS COMPANY, INC., et al.
No. 85 CA 0796.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
*510 W. Glenn Soileau, Breau Bridge, for plaintiff-appellant Lennie Angelle.
E.L. Henry, Baton Rouge, for defendant appellant Walter E. Heller and Co. Southeast Inc.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
This suit arose from a dispute over a lease agreement. Late in 1981, Lennie Angelle (plaintiff), a contractor, became interested in obtaining a Low Ground Pressure (LGP) tractor for clearing swamp land. An LGP tractor is designed to do work in unstable and muddy terrain. The machine plaintiff wanted had to be equipped with a KG blade, which is used for shearing and cutting purposes. He had an opportunity to do some swamp work for Supreme Contractors, but before he could realistically bid on the work, he needed equipment that he did not have, namely, an LGP tractor with a KG blade. He discovered that Energy Builders Company, Inc., (EBCO) had such a tractor which it wanted to sell. Plaintiff and an EBCO official flew to North Carolina and examined the machine. Plaintiff concluded that if it were equipped with a KG blade it would suit his needs.
Plaintiff had on other occasions rented heavy equipment from General Leasing Services, Inc. (GLS). He contacted GLS which agreed to purchase the equipment from EBCO and lease it to plaintiff. On November 10, 1981, GLS purchased the LGP tractor, a winch, an original angle blade, and KG blade from EBCO for $65,000.00. On November 16, 1981, Angelle Backhoe Rentals and GLS executed a contract by which plaintiff leased the equipment from GLS for a three-year term at $2,988.00 per month. The lease absolved GLS of any warranty obligations and of any liability for EBCO's failure to deliver the described merchandise.[1] *511 GLS then assigned its rights under the lease to one of its creditors, Walter E. Heller & Company Southeast, Inc. (Heller); that assignment, dated November 24, 1981, contains the following germane language:
BORROWER [GLS] does hereby sell, assign, transfer and set over unto HELLER all of its right, title and interest in and to the above described lease contract, together with all the rents, issues and profits due and to become due under said lease contract, subject to the following:
SO LONG as the BORROWER is not in default under the terms of the LOAN AGREEMENT, NOTE and MORTGAGE referred to above, or under any other notes or mortgages held by HELLER, BORROWER shall continue to collect the rents and profits from the lease contract for the benefit of HELLER and as provided in the LOAN AGREEMENT.
EBCO delivered the equipment to plaintiff in late January, 1982. The KG blade was not included in this initial shipment, but, according to his testimony, plaintiff allowed the haulers to leave the LGP tractor with him because they promised that the blade was on another truck and would arrive later. Eventually, a KG blade was sent to plaintiff, but he refused to accept it because it did not fit the LGP tractor. Plaintiff notified GLS that he had not received the blade he needed, and it in turn contacted EBCO, which began attempts to locate an appropriate blade. Although plaintiff never took delivery of a satisfactory KG blade, he made sporadic payments to GLS totaling, he contends, $21,253.00.
In February, 1983, plaintiff filed suit for damages against GLS, EBCO, and the EBCO official, alleging that the failure to deliver the correct KG blade was a breach of contract. Apparently only GLS was served, and by the summer of 1982 it was involved in reorganization under the jurisdiction of the bankruptcy court. A plan submitted by GLS allowed Heller to enforce the lease and assignment agreements. Heller intervened in plaintiff's suit, praying for cancellation of the lease contract and damages for nonpayment. Plaintiff then amended his petition to make Heller a defendant and asked that the $21,253.00 in payments be refunded. Thus, plaintiff and Heller were the only parties before the trial court.
The trial court rendered judgment denying both Heller's claims in intervention and plaintiff's claims against Heller. It found that the warranty waiver did not relieve GLS of its obligation to deliver the equipment plaintiff had ordered and that there had never been a binding contract of lease between plaintiff and GLS because the appropriate KG blade was never delivered. Plaintiff's demand against Heller for the payments made to GLS was also dismissed. Both parties have appealed.
EXISTENCE OF A LEASE CONTRACT
The trial court reasoned that no contract of lease was perfected between GLS and plaintiff because the KG blade, an integral and essential part of the thing leased, was never delivered. "Lease or hire is a synallagmatic contract, to which consent alone is sufficient." LSA-C.C. art. 2669. "[T]hree things are necessary to the perfection of a lease: the thing, the price, and the consent." S. Litvinoff, Smith's Materials on the Louisiana Law of Sales and Leases 468 (1978); LSA-C.C. art. 2670. Delivery of the thing is not essential to the perfection of the contract, although delivery is among the obligations of the lessor. LSA-C.C. art. 2692. The November 16, 1981, agreement between plaintiff and GLS contained all the elements required, and we find that it was a perfected contract of lease. Our remaining inquiry must determine the rights of the parties and their assigns under this lease.
PLAINTIFF'S LIABILITY TO HELLER
To determine Heller's right to receive rental payments under the lease we must determine GLS's rights thereunder. The crux of Heller's position is that GLS validly waived all lessor warranties; if GLS made no warranties, the fact that plaintiff never received the KG blade does not relieve plaintiff of his obligation as lessee to make *512 rental payments. Heller cites Louisiana National Leasing Corporation v. ADF Service, Inc., 377 So.2d 92 (La.1979), as support for its argument. In that case, the lessor of a defective photocopying machine sued its lessee for nonpayment of rent. The lease provided that lessor made no warranties and that no defect in the equipment would relieve lessee of the obligation to pay rent. The Supreme Court, at p. 95, ruled that the implied warranty of fitness could be renounced and that "since it is not expressly or impliedly prohibited by law to waive implied warranties by disclaiming liability for vices and defects in the leased object while retaining the right to collect rentals for the entire term of the lease, it is not against public policy."
In Louisiana National Leasing the lessee had taken possession of the photocopying machine and used it without trouble for three months before it began to malfunction. In the instant case, plaintiff never received a very essential part of the equipment that the lessor agreed to provide. Without the KG blade, plaintiff had no need for this type of tractor. The trial court found that the KG blade was never delivered. We cannot say that this finding was clearly wrong. This failure of delivery meant that plaintiff never acquired peaceable possession of the thing leased. LSA-C.C. art. 2692. It is one thing to permit a lessee and lessor by convention to renounce the lessor's implied warranties against defects and unfitness; it is quite another to permit them to waive the lessor's obligation to deliver and thus avoid his duty to cause the lessee to be in peaceable possession.
In Louisiana National Leasing, 377 So.2d at 95, the court notes that "[i]mplied warranties arise by operation of law in every contract of lease. La.Civil Code arts. 2693-95. However, the lessee may as a condition of the contract of lease dispense with the implied warranties." The citation for implied warranties does not include Article 2692. This is most reasonable, for the lessor's duties to deliver and to assure the lessee peaceable possession go to the heart of the lease contract and of the relationship between the parties. Students of the French Civil Code are in accord:
The lessor is bound, by the very nature of the lease, to guarantee the enjoyment of the lessee. This obligation, the nonperformance of which justifies the resolution of the lease even if the nonperformance is not imputable to the lessor, includes the special obligations hereinafter indicated:
1. The lessor must deliver the thing leased to the lessee together with its accessories, at the time the lease is agreed upon and in such a state that it is proper for the usage for which it has been leased. He must, to this end, remove all the obstacles which are raised by third parties, even by simple acts, to the lessee's entry into enjoyment.
....
3. The lessor is bound to provide for the lessee the complete and peaceful enjoyment of the advantages which the lease assures to him.
5 Aubry & Rau, Droit Civil Francais, § 366 (7th ed. 1961) (Citations and footnotes omitted).
The lease imposes on the lessor various obligations all of which spring from a single principle; the lessor is bound to procure for the lessee the enjoyment of the premises leased for the duration of the lease. This obligation ... is the basis for all: this is the principal object of the contract for the lessee, the result which he proposes to obtain for himself in leasing the thing. It is for the lessor what the obligation to transfer the ownership of the thing sold is for the vendor.
2 Planiol, Treatise on the Civil Law, No. 1675 (11th ed. 1939).
To allow the parties to waive fundamental obligations, such as delivery of the thing leased and peaceable possession, would be to allow them to destroy "the character or effect of the contract." Louisiana National Leasing, 377 So.2d at 94. In a discussion of leases such as the one in question here, a doctrinal writer makes the following observations:

*513 It is also common for personal property leases to contain so-called "hell or high water" covenants under which the lessee unconditionally agrees to make lease payments to the lessor notwithstanding any foreseeable or unforeseeable circumstances. While such "hell or high water" covenants are generally enforceable in Louisiana, arguably they may not be enforced in situations in which a lessee lawfully withholds rental payments as a result of the lessor's failure to provide the lessee with peaceable possession of the leased equipment over the lease term. The right of peaceable possession guaranteed by Civil Code article 2692(3) as a matter of public policy may not be waived.
Willenzik, Personal Property Leases in Louisiana, 44 La.L.Rev. 755, 780 (1984), footnotes omitted. See also BNO Leasing Corporation v. Hollins & Hollins, Inc., 448 So.2d 1329 (La.App. 5th Cir.1984), writ denied, 450 So.2d 961 (La.1984).[2]
Heller argues also that GLS's warranty duties could be enforced by plaintiff against EBCO, the supplier of the equipment, because GLS "assigned" to plaintiff its vendee's rights to proceed against its vendor, EBCO. Heller envisions a scheme by which the lessee waives all his rights against lessor and in turn receives the lessor's rights against the vendor of the thing leased. The Supreme Court ruled that a lessor/vendee may validly assign its warranty rights against the seller in Capitol City Leasing Corporation v. Hill, 404 So.2d 935 (La.1981). The court describes as "a waiver of warranty" a paragraph in that lease identical to paragraph four (quoted above) in the lease involved here. But in Capitol City Leasing, 404 So.2d at 937, the lessor "told the lessee that all warranty rights would flow from the seller of the equipment to the lessee. The testimony at trial indicates that there was an express warranty running from the seller to the lessee for a thirty-day period following confection of the leases. There was no waiver of the seller's implied warranty of fitness. La.C.C. art. 2476."
There are four significant differences between the facts of Capitol City Leasing and those in the case at hand. First, in the instant case there was no testimony that the lessor (GLS) had assigned his right to demand delivery against its vendor (EBCO) to lessee (plaintiff). Second, there was no evidence of any express warranty running from EBCO to plaintiff. Third, the sale agreement between EBCO and GLS contains the following waiver of warranty by EBCO:
And the party of the FIRST PART [EBCO] covenants with the party of the SECOND PART [GLS], his heirs and assigns, as follows:
(1) That no express warranties are made except which are made on the face of this agreement.
(2) That the party of the FIRST PART specifically disclaims any implied warranties and the party of the SECOND PART accepts said goods and chattels as is, where is, and with all faults.
Fourth, in Capitol City Leasing all the leased equipment (two log skidders) was in fact delivered; the lessee stopped rental payments because the skidders did not operate properly.
We agree with the Supreme Court's characterization of paragraph four as a *514 waiver of warranty. We disagree with Heller's position that the lease contract assigned GLS's rights against EBCO to plaintiff. The lease merely provides that:
Lessor will request the supplier to authorize Lessee to enforce in its own name all warranties, agreements or representations, if any, which may be made by the supplier to Lessee or Lessor....
This "request" is not the equivalent of an assignment of rights, an agreement by which one party renounces his rights in favor of another party. The "request" is by its own terms dependent upon EBCO's authorization which might or might not be forthcoming.[3]
We conclude that GLS and plaintiff could not validly waive GLS's obligation to deliver the thing leased and assure plaintiff peaceable possession. We need not decide whether those obligations may be transferred to the lessor's vendor (EBCO) by assigning the lessor's rights as a vendee to the lessee, for we find that Heller has not proved such an assignment.
We must now determine whether the failure of delivery relieves plaintiff of the obligation to make rental payments. Heller asks that we compare the plaintiff's nonpayment to nonpayment by a lessee whose lessor refuses to make necessary repairs.[4] It is true that cases have held that a lessee may not withhold rental payments because of the lessor's failure to make repairs. Commercial Equipment Distributors, Inc. v. Anderson, 431 So.2d 29 (La.App. 1st Cir.1983). But the courts have also ruled that when a lessee is prevented from making repairs which the lessor should have made, the lessee will be absolved of making the lease payments. Bowers Electronic Enterprises v. Tiffin Inn Pancake House of Baton Rouge, Inc., 444 So.2d 222 (La.App. 1st Cir.1983). Plaintiff attempted to obtain the KG blade he required, but his considerable efforts were unsuccessful. As the obligations to deliver and assure peaceable possession are not waivable and are deemed part of the contract, GLS breached the law between parties. Under those circumstances, the lessee is not required to make rental payments. See Honeywell, Inc. v. Courtesy Discount House, Inc., 413 So.2d 222 (La.App. 4th Cir.1982).
In Brunies v. Police Jury of Parish of Jefferson, 237 La. 227, 110 So.2d 732 (1959), the lessor sued for payments due on a lease of a building to be used by lessee as a library. A supporting wall was dangerously unsound ("in an advanced state of decomposition"), rendering the structure unfit for lessee's purpose. The defect could be corrected only by what amounted to "reconstructions," and not by "repairs." Under those facts, the court commented, "we readily recognize and give effect to the right of the lessee to terminate the lease and to be absolved from the payment of any rentals." Brunies, 110 So.2d at 737. The KG blade was essential to the purpose for which plaintiff acquired the equipment. Without it, the LGP tractor could not be used for the purposes it was leased. The lessor may not compel the payment of rentals when it is unable to deliver and provide peaceable possession.
Heller also argues that plaintiff used the LGP tractor during the time it was in his possession. If this were true, we would be reluctant to say that the KG blade was an essential part of the cause that impelled plaintiff to enter into the lease agreement. Plaintiff owned three other tractors. The only reason he needed an LGP tractor was to do work in the *515 swamp where the terrain is muddy and unstable. The LGP tractor is equipped with wide treads to stabilize the machine and keep it operable while working in poor terrain. Plaintiff could not do the specified swamp work without the KG blade; so the LGP tractor sat in his yard and was never used on a job. He had other tractors to do his regular work. The trial court found:
Mr. Angelle and his employees testified that the equipment was never used on any job and was kept on Angelle's equipment yard from January 1982 until the date of surrender. This Court does not believe this is any competent evidence to find that Mr. Angelle used the equipment.
This factual finding is supported by the record. Heller's expert appraiser who testified that the LGP tractor had been much used saw it only once, after it was surrendered by plaintiff. He had no opportunity to compare its condition then with its condition when it was left with plaintiff. Our review of the entire record reveals that the finding by the trial court was not manifestly erroneous.
Having determined that GLS had no right to lease payments, we hold that Heller, GLS's assignee, has no right to those payments.
HELLER'S LIABILITY TO PLAINTIFF
Plaintiff contends that Heller is liable for the $21,253.00 in payments he made under the lease agreement. These payments were made by checks payable to GLS. Nothing in the record indicates that these payments went to Heller. The agreement by which GLS assigned its rights under the lease to Heller provided that Heller did "not assume any of the obligations of Borrower [GLS] under the lease contract." The trial court was correct in describing Heller as "an assignee of the lease for security purposes." As such, Heller is not liable to plaintiff for payments he made to GLS.
For the foregoing reasons, the judgment of the trial court denying the claims of Heller against plaintiff and of plaintiff against Heller is affirmed. Costs of this appeal are to be divided equally between the parties.
AFFIRMED.
NOTES
[1] The following are portions of the contract pertinent here:

2. SELECTION OF EQUIPMENT. Lessee has requested equipment of the type and quantity specified above and has selected the supplier named on the reverse side. Lessor agrees to order the equipment from the supplier, but shall not be liable for specific performance of this lease or for damages if for any reason the supplier delays or fails to fill the order. Lessee shall accept such equipment if delivered in good repair, and authorizes Lessor to add to this lease the serial number of each item of equipment so delivered. Any delay in such delivery shall not affect the validity of this lease.
....
4. WARRANTIES. Lessor will request the supplier to authorize Lessee to enforce in its own name all warranties, agreements or representations, if any, which may be made by the supplier to Lessee or Lessor, but Lessor itself makes no express or implied warranties as to any matter whatsoever, including, without limitation, the condition of equipment, its merchantability or its fitness for any particular purpose. No defect or unfitness of the equipment shall relieve Lessee of the obligation to pay rent or of any other obligation under this lease.
....
18. INDEMNITY. Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, expenses, damages and liabilities, including attorney's fees, arising in connection with the equipment, including, without limitation, its manufacture, selection, purchase, delivery, possession, use, operation or return and the recovery of claims under insurance policies thereon, even though caused, occasioned or attributed to by the negligence, either sole or concurrent, of Lessor, its agents, servants, and employees.
[2] In BNO Leasing the court was called on to decide if an alleged lease was in fact a lease or a disguised conditional sale. The "lease" contained a provision evidently similar to paragraph four in the GLS-Angelle agreement. The court commented:

[T]he lease contains a provision (Paragraph No. 4) which provides that if the equipment fails to perform, the defendant corporation's [lessee] remedy is against the supplier, not BNO [lessor]. This clause evidences an intent on BNO's part to function as a financing agent and not as a lessor as contemplated by our Civil Code and is in conflict with its characterization in the agreement as an owner-lessor. We know of no legal basis by which a lessor can shift his legal responsibility to deliver, maintain and/or warrant the thing leased to a third party and still effect a contract of lease. Under the provisions of LSA-C.C. Articles 2692 and 2693, the essence of a contract of lease is to impose this responsibility and obligation on the one seeking to be a lessor.
BNO Leasing, 448 So.2d at 1334.
[3] EBCO did work with plaintiff to find a suitable blade and in fact offered him $4,000.00 in its place. It is therefore clear that EBCO felt an obligation to plaintiff. But what plaintiff leased from GLS was an LGP tractor and the KG blade for it. The question we address is not whether plaintiff expected or sought some relief from the supplier but whether this lessee has a right against this lessor when the lessee is never given

possession of an essential part of the thing leased.
[4] A more appropriate analogy might be to a tenant evicted from the leased premises, since plaintiff was never given possession of an essential part of the thing leased. See Henry Rose Mercantile & Mfg. Co. v. Stearns, 154 La. 946, 98 So. 429 (1923).