ELLIS, Judge:
By this suit, the Collector of Revenue of the State of Louisiana is attempting to collect $272,817.00 in corporation franchise taxes allegedly owed by Gulf Coast Aluminum Corporation, now known as Conalco, Inc. From a judgment rejecting its demands, plaintiff has appealed.
The trial judge has rendered written reasons for judgment, which adequately dispose of the various issues presented by this case, with which we agree, which we adopt as our own, and attach hereto as an appendix.
For the reasons therein set forth, the judgment of the trial court is affirmed at plaintiff’s cost.
AFFIRMED.
APPENDIX
WRITTEN REASONS FOR JUDGMENT
This matter was tried on October 30, 1979. Counsel for the plaintiff, Collector of Revenue, State of Louisiana (hereafter “Collector”) and counsel for defendants, Gulf Coast Aluminum Corporation, Consolidated Aluminum Corporation and Conalco, Inc. (hereafter collectively referred to as “GCA”) filed either or both pretrial and post trial memoranda, and this Court heard oral argument of counsel on November 20, 1979.
Pursuant to the provisions of La.R.S. 39:991 et seq. (Louisiana’s Industrial Inducement Statute), the Parish of Calcasieu (Parish) and GCA entered into agreements whereby the Parish would issue Industrial Development Bonds, the proceeds of which would be and were used to construct a manufacturing facility to be leased to GCA. The lease payments would be used to pay the principal of and interest on the bonds as they came due. The Collector has filed this suit to collect franchise tax which it maintains GCA owes. The Collector’s position, basically, is that the bond proceeds used by the Parish to construct the manufacturing facility should have been included on the books of GCA to establish its franchise tax basis. The Collector adopted various arguments: that the lease transaction was actually a sale; that the bond proceeds constitute “borrowed capital” by GCA; and, that GCA acquired a “material equity,” as that term is used in the accounting profession, in the property and lease agreement. GCA contends that it located its facility in Calca-sieu in reliance upon Louisiana’s industrial inducement package, of which R.S. 39:991 et seq. was an integral part, that the Parish properly followed the requirements of La. R.S. 39:991 et seq. in structuring the transaction and that R.S. 39:991 et seq. provides a special financing arrangement which, if correctly followed, does not result in franchise tax liability to the lessee-industry which leases from the municipality or other authorized local government issuing the bonds.
After considering the testimony and evidence at the trial, the argument of counsel, the briefs and law, this Court finds that GCA has incurred no franchise tax liability to the State of Louisiana for reasons hereafter set forth.
*1192 The Internal Revenue Service was requested to and did review and rule by private letter ruling on the proposed transaction between GCA and the Parish of Calca-sieu. The IRS ruled that since bonds issued under the provisions of R.S. 39:991 et seq. were bonds of Calcasieu Parish (“municipal bonds”) they were exempt from federal taxation.
Bond counsel testified that if the ruling request would have stated that the proposed transaction would result in the inclusion of the bond proceeds in the franchise tax base of GCA, the IRS would have denied exempt status.
The Parish thereafter called a special election for the purpose of submitting to the qualified property tax paying voters the question of issuing $62,700,000 in industrial revenue bonds of the Parish and the issue was approved by the voters. The State Bond and Tax Board and the Board of Commerce and Industry approved the bonds. Bond counsel, by letter opinions, stated that all requirements qf La.R.S. 39:991 et seq. had been complied with. The Parish then acquired certain rights in tracts of property: a right to occupy a tract owned by Lake Charles Harbor and Terminal District and full ownership of another tract which when joined with the first, make up the tract upon which the manufacturing facility was ultimately constructed.
The comprehensive Lease Agreement entered into between the parties reflects that the Parish, as Lessor, is the owner of the rights in the tracts acquired and that GCA is the lessee. The Parish, in a Mortgage and Indenture of Trust, obligates itself as owner of the property and obligor on the bonds to Morgan Guaranty Trust Company of New York, Trustee for the bondholders. The Indenture is the security instrument by which the obligation of the Parish is secured. GCA is not a party to that instrument.
The foregoing is not an ordinary financing transaction; it is one specially authorized by La.R.S. 39:991 et seq., one of the “right to profit” laws enacted as part of a comprehensive industry inducement program enacted in 1964. This industrial inducement program, (including La.R.S. 39:991, and others) was enacted to make industrial location in Louisiana more economically desirable. One of the reasons an industry such as GCA would be attracted to Louisiana through the industrial inducement program is the fact that such industry could lease an industrial site without the costs (including franchise taxation) inherent in ownership.
Taking this statutory background into consideration and applying recognized rules of statutory construction, it is obvious that the industrial bonds issued by the Parish to purchase land and construct the plant leased to GCA, strictly in accordance with La.R.S. 39:991 et seq., cannot justifiably be included in GCA’s corporation franchise tax base. To find otherwise would be inconsistent with the legislative intent in enacting the provisions of R.S. 39:991 et seq.
In seeking to determine legislative intent, it is a well settled maxim that laws should be construed so as to give them effect and not render them meaningless. State v. Mestayer, 144 La. 601, 80 So. 891 (1919); Jordan v. LeBlanc and Broussard Ford, Inc., 332 So.2d 534 (La.App., 3d Cir., 1976); Hills v. Bonin, 329 So.2d 773 (La.App., 1st Cir., 1976); Peyrefitte v. Harvey, 312 So.2d 159 (La.App., 1st Cir., 1975). The effectiveness of the industrial inducement statutes would be greatly diminished, and the purpose of the statutes would be thwarted, if the proceeds of the bond sales were included in the franchise tax base of corporations which lease industrial plants built by parishes with the bond proceeds. The Court notes the Commerce and Industry position in its February, 1976, publication of tax exemptions for industries induced to locate in Louisiana:
“Thus does Louisiana once again demonstrate its willingness to set aside considerations of financial gain, in order to realize the honest gains of a long term partnership with industry.”
The Court does not perceive any ambiguity in the provisions of La.R.S. 39:991 et seq. insofar as that statute permits corporations *1193 to lease industrial sites from municipalities (defined in the statute to include parishes). The Collector, however, apparently feels that corporations which lease industrial plants constructed with bonds issued pursuant to La.R.S. 39:991 have in fact incurred debt and constructed the facility in their own name. The Collector, therefore, has adopted the position that La.R.S. 39:991 does not authorize the creation of a genuine lease, but rather authorizes a method whereby corporations can finance and construct industrial plants in their own name.
GCA is not assessed on the property tax rolls for any immovable property in the Parish. GCA has never applied for nor obtained a ten (10) year property tax exemption. The Parish is the owner of the tracts upon which the plant was constructed. The Collector’s position is also refuted not only by the terms of La.R.S. 39:991 itself, but also by reference to related statutory provisions. La.R.S. 39:992 provides that the industrial inducement bonds shall be authorized by the municipal government, and shall become debts of the municipal government. La.R.S. 39:992 also provides that these bonds shall be exempt from state taxation (a result which would not follow if the debt were incurred by the corporation itself.) La.R.S. 39:993 provides that in the case of default, bondholders may proceed against the government issuing the bonds. In Higgins, Inc. v. Walker, 129 So.2d 840 (La.App., 1st Cir., 1961) the court held:
“It is well settled that this court may not interpret either (of two statutory provisions) in such manner as to obliterate the other if the sections may otherwise be reasonably construed.” (Citations omitted).
“The general intent of law is the key to the whole statute and controls interpretation of the various parts...”
See also, Humble Pipe Line Company v. William T. Burton Industries, Inc., 253 La. 166, 217 So.2d 188 (1968); State v. St. Julian, 221 La. 1018, 61 So.2d 464 (1952); Board of Trustees of Finance Authority v. All Taxpayers, 336 So.2d 306 (La.App., 1st Cir., 1976); State, ex rel. Assistant District Attorney’s Association v. Theriot, 242 So.2d 49 (La.App., 1st Cir., 1970); Hoffpauir v. City of Crowley, 241 So.2d 67 (La.App., 3d Cir., 1970).
The Collector has taken the position that the municipal bonds issued in connection with the construction of GCA’s Calcasieu Plant are in reality borrowed capital of GCA within the meaning of the corporate franchise tax Statute. Such a position requires this Court to treat GCA as the owner of the new facility and dismiss the Parish as a mere interposed party. The Court is being asked to treat La.R.S. 39:991 et seq. as if those statutes created a mere fiction rather than the actual financing arrangement entered into by GCA and the Parish of Calcasieu. In view of the testimony and evidence, and the intent of the legislature in creating the industrial inducement program, this Court cannot accept the Collector’s argument.
The Collector relies heavily on HEP Development Corporation v. Mouton, 256 So.2d 744 (La.App., 1st Cir., 1971), wherein the Court held that the corporate franchise tax “must be interpreted to accord it full legislative intent, and that indulgence in technicalities will not be permitted to defeat the purpose of the law.” The financing arrangement between GCA and the Parish, however, can hardly be characterized as a “technicality.” Rather, the financing arrangement, and particularly GCA’s status as a lessee, is specifically sanctioned by La.R.S. 39:991. In any event, HEP Development is readily distinguished because in this case the Parish, not GCA, is the owner of the property and any default would result in the bondholders looking to the Parish and the property for recovery, not to GCA. .
Additionally, the very issue of ownership of this particular plant has been resolved by the Third Circuit Court of Appeal. In Traigle v. Parish of Calcasieu, 296 So.2d 411 (La.App., 3d Cir., 1976), the Court held:
“The Parish (of Calcasieu) is clearly liable for the (sales and use) taxes in question, as owner of the project...”
*1194 The Parish would clearly not be liable for any franchise tax as it is not the type of corporate entity the franchise tax embraces.
This Court need not reach the issue of “material equity” as it finds this financing transaction one specially sanctioned by the legislature and in this circumstance not resulting in any franchise tax liability in GCA.
Judgment in favor of GCA and against the Collector, dismissing this suit, will be signed accordingly.
Baton Rouge, Louisiana, this 10 day of January, 1980.
/s/ Douglas M. Gonzales DOUGLAS M. GONZALES JUDGE, DIVISION L 19TH JUDICIAL DISTRICT COURT