|i>KLINE, J.
Defendant, the Louisiana Department of Revenue (“Department”), appeals the trial court’s grant of summary judgment in favor of plaintiff, System Fuels, Inc. (“System Fuels”), determining that its lease obligations, under various leases, did not constitute “borrowed capital” for Louisiana corporate franchise tax purposes. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
The Department conducted an audit of System Fuels’ books and records for the franchise tax years ending December 1988, 1989, 1990, 1992, 1998, and 1994 to determine whether System Fuels had paid the proper Louisiana corporate franchise tax for those years. As a result of the audit, the Department concluded that System Fuels had underpaid its corporate franchise taxes during the audited years.
The Department’s conclusion was based on the existence of five long-term lease agreements entered into by System Fuels during the 1970s. Three of the agreements were leases of immovable property, specifically, leases for fuel oil storage facilities. The remaining two agreements were bareboat charter agreements for the lease of water vessels to transport fuel oil, thus, they were leases of movable property. The Department maintained that System Fuels’ obligations to pay rent pursuant to these five leases constituted “borrowed capital” as defined by La. R.S. 47:603 and thus, should have been included in the company’s franchise tax base. Because the company excluded those amounts in calculating its franchise tax obligation, the Department claimed that System Fuels had underpaid its franchise taxes during the pertinent years and that the unpaid taxes, together with interest, totaled $459,401.67.
On December 10, 1998, System Fuels made payment under protest of the total amount allegedly owed and, pursuant to La. R.S. 47:1576, the Department placed the disputed amount in escrow. On January 8, 1999, System Fuels filed suit seeking recovery of the $459,401.67 paid under protest. Soon thereafter, pursuant to an agreement by the parties, an additional sum of $51,846.40 was also paid under protest by System Fuels and put into escrow. This additional |3sum pertained to alleged corporate franchise taxes owed for the franchise tax years ending December 1997,1998, and 1999.
On November 26, 2001, System Fuels filed a motion for summary judgment contending that its lease obligations did not constitute “borrowed capital” for Louisiana corporate franchise tax purposes. Argument on the motion was heard on April 8, 2002.
In its oral reasons for judgment, the trial court stated “that whatever reasons there may be when a lease is entered into[, other] ... than a conveyance of complete title, that it is still a lease.” The trial court determined that the contested agreements were “in fact leases” and based on the case of Traigle v. Gulf Coast Aluminum Corp., 422 So.2d 1190 (La.App. 1 Cir.1982), writ denied, 429 So.2d 143 (La.1983), it concluded that System Fuels’ obligations pursuant to the leases were not borrowed capital. Accordingly, summary judgment was rendered in favor of System Fuels on May 16, 2002. From this judgment, the Department appeals asserting the following two assignments of error:
1. The Honorable Court below erred when [it] held that a lease could not include “borrowed capital” and that there must be a conveyance of complete title to support an obligation to pay Louisiana Franchise Tax on “Borrowed capital.”
*588 2. The Honorable Court below erred in that the indebtedness of System Fuels, as Lessee, to the interposed Lessor should not be included as “borrowed capital” in the franchise tax base of System Fuels pursuant to the Louisiana Tax Statutes [La. R.S. 47:601, et seq.].
STANDARD OF REVIEW
On appeal, summary judgments are reviewed de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Brumfield v. Gafford, 99-1712, p. 3 (La.App. 1 Cir. 9/22/00), 768 So.2d 223, 225. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ferguson v. Plummer’s Towing & Recovery Inc., 98-2894, pp. 3-4 (La.App. 1 Cir. 2/18/00), 753 So.2d 398, 400.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be |4granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Naquin v. Louisiana Power & Light Company, 98-2270, p. 4 (La. App. 1 Cir. 3/31/00), 768 So.2d 605, 607, writ denied, 2000-1741 (La.9/15/00), 769 So.2d 546. In the present case, the facts are undisputed, thus we need only make a determination as to whether System Fuels is entitled to judgment as a matter of law.
RELEVANT LAW
In making this determination, we must look to the Louisiana corporate franchise tax statutes set forth in La. R.S. 47:601, et seq. Louisiana Revised Statute 47:601 specifically provides, in pertinent part:
A. Every domestic corporation and every foreign corporation, exercising its charter, or qualified to do business or actually doing business in this state, or owning or using any part or all of its capital, plant, or any other property in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this Chapter shall pay an annual tax at the rate of $3.00 for each $1,000.00, or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided[.] (Emphasis added.)
Further, La. R.S. 47:602 A, states:
A. Taxable capital. Every corporation taxed under this chapter shall determine the amount of its issued and outstanding capital stock, surplus, undivided profits and borrowed capital as the basis for computing the franchise tax levied under this chapter and determining the extent of the use of its franchise in this state. (Emphasis added.)
The term “borrowed capital” is then defined in La. R.S. 47:603 as “all indebtedness of a corporation, subject to the provisions of this Chapter, maturing more than one year from the date incurred, or which is not paid within one year from the date incurred regardless of maturity date.”
DISCUSSION
The sole issue before us is a question of law which requires a determination of whether the obligations undertaken by System Fuels pursuant to various lease agreements constitute “borrowed capital” under the aforementioned laws. In making this determination, we are mindful that tax statutes are to be inter *589 preted liberally in favor of the taxpayer. 5 Goudchaux/Maison Blanche, Inc. v. Broussard, 590 So.2d 1159, 1161 (La.1991). If the statute can reasonably be interpreted more than one way, the interpretation less onerous to the taxpayer is to be adopted. Id.
More specifically, words defining a thing to be taxed should not be extended beyond their clear import. Cleco Evangeline, LLC v. Louisiana Tax Commission, 2001-2162, p. 6 (La.4/3/02), 813 So.2d 351, 355. Absent evidence to the contrary, the language of the statute itself must clearly and unambiguously express the intent to apply to the property in question. Unless the words imposing the tax are expressly in the statute, the tax cannot be imposed. Id., 2001-2162 at p. 7, 813 So.2d at 355.
With these precepts in mind, we address the Department’s respective assignments of error.
Assignment of Error No. 1
The Department contends that the trial court erred in finding that the lease obligations did not constitute “borrowed capital” thus, mistakenly mandating that there must be a conveyance of title to support an obligation to pay the Louisiana franchise tax under the “borrowed capital” provisions. The Department concedes that the present case involves leases, wherein no titles are conveyed; however, it argues that the leases in question are actually “financed leases,” as opposed to “true leases.” According to the Department, any lease obligations owed pursuant to a “financed lease” constitute “borrowed capital” for Louisiana franchise tax purposes, even though no title has passed.
To buttress its argument, the Department relies upon the Louisiana Lease of Movables Act, which defines and distinguishes the terms “financed lease” and “true lease” in La. R.S. 9:3306 as follows:
(12)(a) “Financed lease” means a lease entered into prior to the time Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.) becomes effective under which:
(i) The lessee is obligated to pay total compensation over the base lease term which is substantially equivalent to or which exceeds the initial value of the leased property; and
(ii) The lessee is obligated to become, or has the option of becoming, the owner of the leased property upon termination of the lease for no additional consideration or for nominal consideration.
* * *
(26) “True lease” means (a) a lease entered into before January 1, 1990 under which:
(i) The lessee has no obligation to pay total compensation over the base lease term which is substantially equivalent to or in excess of the initial value of the leased property; or
(ii) The lessee does not have the option or obligation to become the owner of the leased property upon termination of the lease for no or nominal consideration.
(Emphasis added.)
While we recognize that these definitions differ, the Department does not specify, although we may surmise, why it contends that the definition of “borrowed capital” encompasses one but not the other. Nevertheless, we find the Department’s reliance on this Act to be unpersuasive for various reasons. Firstly, we note that, ordinarily, tax laws are sui generis. South Central Bell Telephone Co. v. Barthelemy, 94-0499, p. 6 (La.10/17/94), 643 So.2d 1240, 1243. Secondly, the Louisiana Lease of Movables Act only pertains to movables; however, three of the five leases at issue *590 herein are for immovable property. Thirdly, regarding the leases on the movables (or even those on the immovables for that matter), the pertinent leases did not fit within the Act’s definition of a “financed lease” because the requirement that the lessee be given the option to purchase the leased property at the termination of the lease “for no consideration or for nominal consideration” is not met.
At the end of the lease terms, the immovable lease agreements provide that System Fuels has the option to buy the leased property. If System Fuels does choose to exercise its option to purchase the leased property, all three immovable lease agreements provide that the purchase price be the “fair market sales value” of the property at the time of the termination of the agreement. Similarly, the two movable lease agreements provide that System Fuels “shall” buy the leased property in certain narrowly defined circumstances, however, should those circumstances occur, the purchase price must be at a cost value or a fair market value of the leased property. Clearly, the purchase price provided for in all five of the lease agreements does not equate with the absence of ^consideration or nominal consideration required to constitute a “financed lease” under the Louisiana Lease of Movables Act.
Furthermore, we find the Department’s reliance on Louisiana Power & Light Company v. Parish School Board of the Parish of St. Charles, 597 So.2d 578 (La. App. 5 Cir.), unit denied, 604 So.2d 1316 (La.1992), is misplaced. In that case, the relevant issue was whether “quarterly payments of principal and interest stemming for a financing transaction structured in the form of a saleAease back [were] subject to the parochial lease tax.” St. Charles, 597 So.2d at 581. And although that case concerned a financing arrangement that was simply arranged to appear as a lease in form, its relevant facts are so distinguishable from the case at hand, that we are precluded from analogizing that arrangement to System Fuels’ lease agreements. Firstly, both parties in the St. Charles case agreed that the so-called leases were actually financing agreements. Secondly, there was substantial testimony that the parties considered and treated the agreement as a financing arrangement, not as a lease. St. Charles, 597 So.2d at 588. However, in the present ease, the affidavit of Keith Wheelahan, former vice-president of System Fuels, establishes that that System Fuels has treated the pertinent agreements as leases. Finally, the “lessee” in the St. Charles ease actually consumed the leased property thus, violating the requirements of La. C.C. art 2720 and becoming the owner of the property. Id. For these reasons, we cannot agree with the Department’s contention that the St. Charles case is dispositive in this instance.
We find the present case more akin to Traigle v. Gulf Coast Aluminum Corp., 422 So.2d 1190 (La.App. 1 Cir.1982), writ denied, 429 So.2d 143 (La.1983), which more proximately dealt with the issue at hand. Although Traigle specifically referenced the Industrial Inducement Statute, it addressed whether the lease payments made by the lessee of a manufacturing facility to the lessor, Calcasieu Parish, said lease payments paying the principal and interest on bonds issued by the Parish to finance the facility, constituted borrowed capital for Louisiana corporate franchise tax purposes. In Traigle, 422 So.2d at 1191-1193, lsthis court adopted the trial court’s reasons for judgment, which provided, in part, as follows:
Pursuant to the provisions of La. R.S. 39:991 et seq. (Louisiana’s Industrial Inducement Statute), the Parish of Cal-casieu (Parish) and GCA entered into *591 agreements whereby the Parish would issue Industrial Development Bonds, the proceeds of which would be and were used to construct a manufacturing facility to be leased to GCA. The lease payments would be used to pay the principal of and interest on the bonds as they came due. The Collector has filed this suit to collect franchise tax which it maintains GCA owes. The Collector’s position, basically, is that the bond proceeds used by the Parish to construct the manufacturing facility should have been included on the books of GCA to establish its franchise tax basis. The Collector adopted various arguments: that the lease transaction was actually a sale; that the bond proceeds constitute “borrowed capital” by GCA[.]
[[Image here]]
The comprehensive Lease Agreement entered into between the parties reflects that the Parish, as Lessor, is the owner of the rights in the tracts acquired and that GCA is the lessee.
[[Image here]]
The Collector, therefore, has adopted the position that La. R.S. 39:991 does not authorize the creation of a genuine lease, but rather authorizes a method whereby corporations can finance and construct industrial plants in their own name.
... [However, the] Parish is the owner of the tracts upon which the plant was constructed.
The Collector has [further] taken the position that the municipal bonds issued in connection with the construction of GCA’s Calcasieu Plant are in reality borrowed capital of GCA within the meaning of the corporate franchise tax Statute. Such a position requires this Court to treat GCA as the owner of the new facility and dismiss the Parish as a mere interposed party.... [T]his Court cannot accept the Collector’s argument.
Thus, the implication is that where there is a “genuine lease,” as opposed to a disguised credit sale, the lease obligations are not to be considered “borrowed capital” for franchise tax purposes. Consequently, we decline to hold that all payments made pursuant to agreements arranged in lease form will never constitute “borrowed capital” as we are always compelled to recognize the substance of the transaction over its form, in determining the applicability of tax statutes. McNamara v. Electrode Corporation, 418 So.2d 652, 662 (La.App. 1 Cir.), writ denied, 420 So.2d 986 (La.1982). Hence, the taxpayer cannot defeat the collection of taxes by either the wording, form, or label of a contract. Id. However, we do find that when a “true” or “genuine” lease Lexists, the lease obligations created thereby do not constitute “borrowed capital” for Louisiana franchise tax purposes.
In the present case, the Department has offered no viable evidence that the pertinent leases in the present ease are not “true” or “genuine” leases. As previously noted, System Fuels did not acquire title to the leased property. Moreover, at the end of the lease terms, should System Fuels buy the leased property, it must do so for either the cost or fair market sales value of the property at the time of the lease’s termination. Accordingly, we find the Department’s first assignment of error to be without merit.
Assignment of Error No. 2
In a second, though closely-related, assignment of error, the Department contends the “indebtedness” of System Fuels under the lease agreements should be construed as “borrowed capital” under the language of La. R.S. 47:603.
*592 The Department does not dispute System Fuels’ contention that the term “indebtedness” has been jurisprudentially defined as “an existing, unconditional and legally enforceable obligation to pay,” citing Tomlinson v. 1661 Corp., 377 F.2d 291, 295 (5 Cir.1967). Rather, it maintains that System Fuels’ obligation to pay rent pursuant to the leases was “absolute and unconditional” and that “such payments ... due one year from inception” constituted “borrowed capital” as defined by La. R.S. 47:603.
The Department bases its position on the presence of so-called “hell or high water” clauses contained within the leases. According to the Department, the language of these “hell or high water” clauses makes it “self-evident ... that System Fuels [was] obligated to pay the indebtedness due, regardless of any conceivable event which might occur. All sums due one year from inception are, therefore, ‘borrowed capital’ and, as such, are subject to the Louisiana Franchise Tax.” We must respectfully disagree with the Department’s position.
Initially, we note that the Department necessarily limits its argument to clauses contained within the three leases pertaining to immovable property |inbecause the two movable lease agreements contain no such comparable language.
Additionally, in Angelle v. Energy Builders Company, Inc., 496 So.2d 509, 513 (La.App. 1 Cir.1986), this court recognized the following observations by a doctrinal writer:
It is also common for personal property leases to contain so-called “hell or high water” covenants under which the lessee unconditionally agrees to make lease payments to the lessor notwithstanding any foreseeable or unforeseeable circumstances. While such “hell or high water” covenants are generally enforceable in Louisiana, arguably they may not be enforced in situations in which a lessee lawfully withholds rental payments as a result of the lessor’s failure to provide the lessee with peaceable possession of the leased equipment over the lease term. The right of peaceable possession guaranteed by Civil Code article 2692(3) as a matter of public policy may not be waived. Willenzik, Personal Property Leases in Louisiana, 44 La. L.Rev. 755, 780 (1984), footnotes omitted.
Thus, a “true” or “genuine” lease, by its very nature, is never an unconditional obligation to pay because a lease is a bilateral, or synallagmatic, contract whereby the lessee and the lessor obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other. La. C.C. art.1908. Louisiana Civil Code article 2692 establishes that, among other duties, a lessor is bound to cause the lessee to be in peaceable possession of the property during the term of the lease. The duties of a lessee are set forth in La. C.C. art. 2710, et seq. and include the obligation to pay the rent at the terms agreed on. As previously noted, the lessee’s right to peaceable possession is a matter of public policy that cannot be waived. Therefore, should the lessor fail to provide the lessee with peaceable possession, the lessee’s obligation to pay rent ceases, and no “hell or high water” clause can be relied upon to resurrect that obligation.
Finally, even if the term “indebtedness,” as it is used in La. R.S. 47:603, did not require that an obligation be “unconditional,” the Department’s argument that System Fuels’ lease obligations constituted “indebtedness” must still fall. Louisiana Revised Statute 47:603 specifically defines “borrowed capital” as “indebtedness ... maturing more than one *593 year from the date incurred, or which |nis not paid within one year from the date incurred regardless of maturity date.” The court in Gentry v. Bodan, 347 F.Supp. 367, 375 (W.D.La.1972), noted:
The consideration given for rent is the right to occupy the premises. If the right to occupy terminates, then the obligation to pay rent ceases, and no debt is created until the time stipulated for the payment arrives. Standard Oil Co. of New Jersey v. Elliott, 80 F.2d 158 (4th Cir.1935); In re Roth & Appel, 181 F. 667, 669 (2d Cir.1910). Therefore, if one is obligated to pay rent in the future, the debt does not arise until the time for payment arrives.
(Emphasis added.) See Shreveport Plaza Associates Ltd. Partnership v. L.R. Resources II, 557 So.2d 1067, 1071 (La.App. 2 Cir.1990); see also Union Bank v. Cottonport Ins. Exchange, 93-47 (La.App. 3 Cir. 1/12/94), 630 So.2d 975, 977, unit denied, 94-0721 (La.5/6/94), 637 So.2d 1049; Richard v. Broussard, 495 So.2d 1291, 1293 (La.1986). Consequently, when periodic rental payments exist under a lease agreement, like those at issue herein, no debt is incurred until payment becomes due. In the present case, the obligation to pay rent is incurred every six months at which time the payment also becomes due, thus such obligations do not mature “more than one year from the date incurred.” What is more, under the lease agreements, rental payments cannot be paid more than one year from the date incurred without the lessee defaulting. Hence, we also find the Department’s second assignment of error to be unpersuasive.
CONCLUSION
For the foregoing reasons, the trial court’s grant of summary judgment in favor of System Fuels, Inc. is affirmed. The Louisiana Department of Revenue is cast with the costs of this appeal in the amount of $698.55.
AFFIRMED.