KLINE, J.
Defendant, the Louisiana Department of Revenue (“Department”), appeals the trial court’s grant of summary judgment in favor of plaintiff, Entergy Louisiana, Inc. (formerly known as “Louisiana Power & Light” and hereinafter referred to as “En-tergy”), determining that its lease obli *76 gations, under various leases, did not constitute “borrowed capital” for Louisiana corporate franchise tax purposes. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
The Department conducted an audit of Entergy’s books and records for the tax years ending in December of 1989, 1990, 1991, 1992, 1993, and 1994, to determine whether Entergy had paid the appropriate amount of corporate franchise taxes during those years. As a result of the audit, the Department asserted that Entergy had underpaid its corporate franchise taxes for the years of 1990 through 1994.
The Department based its assertion on the existence of three transactions that Entergy had entered into in 1989 for the sale and leaseback of three undivided portions (the aggregate being approximately equivalent to 9%) of its 100% ownership interest in the Waterford 3 nuclear electric generating facility located in Taft, Louisiana. The aggregate sales price for the property was $353,600,000.00 and was sold by Entergy to an unrelated Owner Trustee under three separate, but nearly identical, trust agreements with an Owner Participant. The funds used to satisfy the purchase price of the sale were obtained through the sale of bonds by the Owner Trustee/lessor in the amount of $309,997,000.00 with the balance of the purchase price, $43,603,000.00, purportedly being contributed to the Owner Trustee/lessor by the Owner Participant. Pursuant to the sale and leaseback agreements, Entergy, as lessee, then agreed to leaseback from the Owner Trustee the portion of the property it had sold.
According to the Department, Entergy’s lease obligations under these transactions constituted “borrowed capital” pursuant to Louisiana’s corporate franchise tax provisions and thus should have been included in Entergy’s franchise tax base. Because it was improperly excluded, the Department |Rmaintained that Entergy had underpaid its corporate franchise taxes for the years of 1990 through 1994.
On December 10 and 15, 1998, Entergy made payments under protest of the total amount allegedly owed and filed suit to recover the same on January 8, 1999. On September 12, 2002, Entergy filed a motion for summary judgment arguing that the pertinent lease obligations did not constitute borrowed capital under Louisiana’s corporate franchise tax provisions. Argument on the motion was heard on November 18, 2002, and its oral reasons for judgment, the trial court stated:
In this matter, the Court believes that the Gulf Coast Aluminum case is the prevailing guidance. The Court feels that this is not a disguised credit sale. It is a long term lease. It is not borrowed capital.
Accordingly, summary judgment was rendered in favor of Entergy on December 20, 2002. The Department appeals from this judgment asserting the following assignments of error:
1. The Honorable Court below erred when [it] relied on Gulf Coast Aluminum, as the prevailing guidance in a Louisiana Corporate Franchise Tax case.
2. The Honorable Court below erred in holding that a long term lease may not include borrowed capital.
3. The Honorable Court below erred in ruling that the long-term indebtedness of Entergy ... should not be included as “borrowed capital” in the franchise tax base of Entergy ... pursuant to the Louisiana Tax Statutes [La. R.S. 47:601, et seq.].
*77 4. The Honorable Court below erred in effectively granting Entergy ... an exemption from the “borrowed capital” provisions of the Louisiana Franchise Tax Statutes [La. R.S. 47:601, et seq.].
STANDARD OF REVIEW
On appeal, summary judgments are reviewed de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Brumfield v. Gafford, 99-1712, p. 3 (La.App. 1 Cir.9/22/00), 768 So.2d 223, 225. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the Rmover is entitled to judgment as a matter of law. Ferguson v. Plummer’s Towing & Recovery Inc., 98-2894, pp. 3-4 (La.App. 1 Cir.2/18/00), 753 So.2d 398, 400.
A motion for summary judgment. is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment' as a matter of law. Naquin v. Louisiana Power & Light Company, 98-2270, p. 4 (La.App. 1 Cir. 3/31/00), 768 So.2d 605, 607, writ denied, 2000-1741 (La.9/15/00), 769 So.2d 546. In the present case, the facts are undisputed, thus we need only make a determination as to whether Entergy is entitled to judgment as a matter of law.
RELEVANT LAW
In making this determination, we must look to the Louisiana corporate franchise tax statutes set forth in La. R.S. 47:601 et seq. Louisiana Revised Statute 47:601 specifically provides, in pertinent part:
A. Every domestic corporation and every foreign corporation, exercising its charter, or qualified to do business or actually doing business in this state, or owning or using any part or all of its capital, plant, or any other property in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this Chapter shall pay an annual tax at the rate of $3.00 for each $1,000.00, or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided[.] (Emphasis added.)
Further, La. R.S. 47:602 A, states:
A. Taxable capital. Every corporation taxed under this chapter shall determine the amount of its issued and outstanding capital stock, surplus, undivided profits and borrowed capital as the basis for computing the franchise tax levied under this chapter and determining the extent of the use of its franchise in this state. (Emphasis added.)
The term “borrowed capital” is defined in La. R.S. 47:603 as “all indebtedness of a corporation, subject to the provisions of this Chapter, maturing more than one year from the date incurred, or which is not paid within one year from the date incurred regardless of maturity date.”
[.DISCUSSION
The issue before us is a question of law which requires a determination of whether Entergy’s obligations pursuant to various sale and leaseback agreements constitute “borrowed capital” under the aforementioned laws. In making this determination, we are mindful that tax statutes are to be interpreted liberally in favor of the taxpayer. Goudchaux/Maison Blanche, Inc. v. Broussard, 590 So.2d *78 1159, 1161 (La.1991). If the statute can reasonably be interpreted more than one way, the interpretation less onerous to the taxpayer is to be adopted. Id.
More specifically, words defining a thing to be taxed should not be extended beyond their clear import. Cleco Evangeline, LLC v. Louisiana Tax Commission, 2001-2162, p. 6 (La.4/3/02), 813 So.2d 351, 355. Absent evidence to the contrary, the language of the statute itself must clearly and unambiguously express the intent to apply to the property in question. Unless the words imposing the tax are expressly in the statute, the tax cannot be imposed. Id., 2001-2162 at p. 7, 813 So.2d at 355.
With the precepts in mind, we proceed to address the Department’s alleged assignments of error.
Assignments of Error Nos. 1, 2, and 3
In its first three assignments of error, the Department essentially argues that the trial court mistakenly relied upon Traigle v. Gulf Coast Aluminum Corp., 422 So.2d 1190 (La.App. 1 Cir.1982), writ denied, 429 So.2d 143 (La.1983), and, as a result, erroneously concluded that Entergy’s obligations pursuant to the pertinent leases did not constitute “borrowed capital” for Louisiana corporate franchise tax purposes.
In Traigle v. Gulf Coast Aluminum Corp., the Parish of Calcasieu and Gulf Coast Aluminum (“GCA”) entered into agreements, pursuant to the provisions of La. R.S. 39:991, et seq. (Louisiana’s Industrial Inducement Statute), whereby the Parish would issue Industrial Development Bonds, the proceeds of which would be and were used to construct a manufacturing facility to be leased |fito GCA. The lease payments made by GCA would be used to pay the principal of and interest on the bonds as they came due.
In that case, the Collector of Revenue argued, among other things, that the bond proceeds constituted “borrowed capital” by GCA for franchise tax purposes. This Court specifically rejected that argument. In doing so, we adopted, as our own, the trial court’s written reasons for judgment, which provided at 422 So.2d at 1193, in part, as follows:
The Collector has taken the position that the municipal bonds issued in connection with the construction of GCA’s Calcasieu Plant are in reality borrowed capital of GCA within the meaning of the corporate franchise tax Statute. Such a position requires this Court to treat GCA as the owner of the new facility and dismiss the Parish as a mere interposed party. The Court is being asked to treat La.R.S. 39:991 et seq. as if those statutes created a mere fiction rather than the actual financing arrangement entered into by GCA and the Parish of Calcasieu. In view of the testimony and evidence, and the intent of the legislature in creating the industrial inducement program, this Court cannot accept the Collector’s argument.
The Collector relies heavily on HEP Development Corporation v. Mouton, 256 So.2d 744 (La.App. 1st Cir.1971), wherein the Court held that the corporate franchise tax “must be interpreted to accord it full legislative intent, and that indulgence in technicalities will not be permitted to defeat the purpose of the law.” The financing arrangement between GCA and the Parish, however, can hardly be characterized as a “technicality.” Rather, the financing arrangement, and particularly GCA’s status as a lessee, is specifically sanctioned by La.R.S. 39:991. In any event, HEP Development is readily distinguished because in this case the Parish, not GCA is the owner of the property....
(Emphasis added.)
We agree with Entergy, that the holding in Traigle had two underpinnings: 1) the *79 Louisiana Industrial Inducement provisions set forth in La. R.S. 39:991, et seq.; and 2) the fact that the Parish was the owner of the plant and GCA was simply a lessee. Although the present case is distinguishable from Traigle in that it does not reference the Louisiana Industrial Inducement provisions, we find that it is still determinative under the facts of this case.
In both Traigle and the case at hand, the taxpayer was the lessee under a long-term lease. In both cases, the lessor/owner issued bonds to finance its ownership of the property. And in both cases, the Department effectively asked the court to treat the lessee as the owner of the leased property, to treat the bonds as if they were the debt of the lessee, and to dismiss the actual owner as |7a mere interposed party. However, here, as in Traigle, the lessee is not the owner of the property.
In Traigle, the court found that the pertinent statutory provisions provided for the creation of a “genuine lease,” thus mandating a finding that a disguised credit sale had not occurred and the Parish was indeed the owner/lessor of the property and GCA was merely the lessee. In the case sub judice, we also find that a “genuine” or “true” lease was created. Entergy sold the property for the valid consideration of $353,600,000.00 and ownership was transferred accordingly. Entergy then leased the property back from the new owner. Although, under the terms of the contracts, Entergy has the option to repurchase the property at certain intervals and at the termination of the agreements, it can only do so by paying the property’s fair market value price. Consequently, we see no indicia that the agreements are disguised credit sales or anything other than genuine leases. Therefore, following the dictates of the court in Traigle, we should find that Entergy’s obligations under the pertinent agreements do not constitute borrowed capital for Louisiana corporate franchise tax purposes.
However, the Department counters such a proposed finding by contending that the pertinent sales by Entergy must be presumed to be simulations pursuant to La. C.C. art. 2480, because Entergy remained in corporeal possession of the property after the sales thus rendering Entergy the actual owner of the property. We find the Department’s contention to be untenable. Were such a presumption to apply, we find that it was adequately rebutted.[2]
Louisiana Civil Code article 2480 provides:
When the thing sold remains in the corporeal possession of the seller the sale is presumed to be a simulation, and, where the interest of heirs and creditors of the seller is concerned, the parties must show that their contract is not a simulation.
| «The burden of proof is ordinarily placed upon the party who attacks a sale as a simulation, but when the legal presumption of simulation is applicable, the burden of proof shifts to party to the sale to establish that it was authentic and not merely a simulation. To rebut the presumption, the party to the purported sale must establish a good-faith transaction resulting in a true alienation of ownership *80 for consideration. Wilson v. Progressive State Bank & Trust Co., 446 So.2d 867, 869 (La.App. 2 Cir.1984). Hence, a transaction will not be set aside as a simulation if any consideration supports the transaction; the reality of the transference is thus established. Peacock v. Peacock, 28,324, p. 7 (La.App. 2 Cir. 5/8/96), 674 So.2d 1030, 1034. Moreover, where the vendor remains in possession of the property the presumption may be rebutted by evidence sexwing to explain the possession of the vendor. Chatman v. Bundy, 130 La. 158, 161, 57 So. 786 (1912).
As previously mentioned herein, it is undisputed that Entergy sold the property for the valid consideration of $353,600,000.00, thus supporting the reality of the transaction. In the same agreements accomplishing the sale, Entergy also obtained leases of the sold property, which clearly explains Entergy’s continued corporeal possession of the property. As a result, we find the Department’s argument that the sales in question were actually simulations to be without substance.
Finally, The Department contends that Entei-gy incurred “unconditional and irrevocable” obligations under the agreements “to pay regardless of the happening of subsequent events” thus constituting borrowed capital as that term is defined in La. R.S. 47:603. We must respectfully disagree.
The Department bases its assertion on the presence of so-called “hell or high water” clauses contained within the pertinent agreements. Despite the existence of these clauses, we do not conclude that Entergy had any absolute, unconditional obligations to pay. In addition to the various contractual provisions contained within the agreements, which would abrogate En-tergy’s obligations to pay under certain conditions, there is also legal basis for this conclusion.
In Angelle v. Energy Builders Company, 496 So.2d 509, 513 (La.App. 1 Cir. 1986), this court, citing Willenzik, Personal Property Leases in Louisiana, 44 La. L.Rev. 755, 780 (1984), recognized the following observations by a doctrinal writer:
It is also common for personal property leases to contain so-called “hell or high water” covenants under which the lessee unconditionally agrees to make lease payments to the lessor notwithstanding any foreseeable or unforeseeable circumstances. While such “hell or high water” covenants are generally enforceable in Louisiana, arguably they may not be enforced in situations in which a lessee lawfully withholds rental payments as a result of the lessor’s failure to provide the lessee with peaceable possession of the leased equipment over the lease term. The right of peaceable possession guaranteed by Civil Code article 2692(3) as a matter of public policy may not be waived.
Thus, a “true” or “genuine” lease, by its very nature, is never an unconditional obligation to pay because a lease is a bilateral, or synallagmatic, contract whereby the lessee and the lessor obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other. La. C.C. art.1908. Louisiana Civil Code article 2692 establishes that, among other duties, a lessor is bound to cause the lessee to be in peaceable possession of the property during the term of the lease. The duties of a lessee are set forth in La. C.C. arts. 2710, 2719, and 2720 and include the obligation to pay the rent at the terms agreed on. As previously noted, the lessee’s right to peaceable possession is a matter of public policy that cannot be waived. Therefore, should the lessor fail to provide the lessee with peaceable possession, the lessee’s obligation to *81 pay rent ceases, and no “hell or high water” clause can be relied upon to resurrect that obligation.
Accordingly, we find the Department’s first three assignments of error to be to be without merit.
Assignment of Error No. 4
In its final assignment of error, the Department contends that the trial court’s summary judgment “effectively” granted Entergy an “exemption” from the “borrowed capital” provisions of the franchise tax statutes. In brief to this court, the Department maintains that:
[i]f Entergy is correct in its interpretation that sales and leaseback transactions are not covered by the statutory provisions applicable 110to borrowed capital ... then Entergy necessarily is contending that Entergy’s payment obligations are exempt, thereby placing the burden of proof, which was not met below, directly upon Entergy to establish the manner in which the statutory provision concerning borrowed capital is not applicable to Entergy.
We find that such an argument puts the cart before the horse. An exemption implies a release from some burden, duty, or obligation. State v. Exxon Corporation, 95-2501, p. 6 (La.App. 1 Cir. 6/28/96), 676 So.2d 783, 786. Therefore, properly speaking, an obligation to pay a tax must necessarily exist and apply before an exemption can effectively relieve one of the duty to pay it. There has been no “exemption” in the present case because we have already determined that the particular tax provisions regarding borrowed capital do not encompass Entergy’s lease obligations. Accordingly, we also find this assignment of error to be without merit.
CONCLUSION
For the foregoing reasons, the trial court’s grant of summary judgment in favor of Entergy Louisiana, Inc. is affirmed. The Louisiana Department of Revenue is cast with the costs of this appeal in the amount of $416.55.
AFFIRMED.

. Subsequent to the formation of the agreements in question, the Louisiana Legislature, by Acts 2001, No. 866, § 1, enacted La. R.S. 9:3371, which provides:
Sale/lease-back commercial transactions involving immovable or movable property with a fair market value in excess of twenty-five thousand dollars and located within this state are hereby declared to be valid and enforceable. Such transaction shall produce and result in the legal consequences described in the written sale/leaseback agreement between the parties and shall not be presumed to be a simulation.