CHUTZ, J.
12Plaintiff-appeIlant, the Parish of Ascension (the Parish), appeals the trial court’s judgment that concluded the Parish’s attempt to increase 2016 millages was invalid due to its failure to adhere to statutory notice requirements and declared that the defendant-appellee, the State of Louisiana through the Office of the Legislative Auditor, Daryl G. Purpera (the Legislative Auditor), properly declined to certify the Parish’s 2016 increased millages. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
After the quadrennial reassessment of property located within Ascension Parish, on July 7, 2016, at a duly-noticed Ascension Parish Council (the Council) meeting conducted in Donaldsonville, Louisiana, in an attempt to increase the millage rates in excess of the rates established by the Louisiana Constitution but not in excess of the prior year’s maximum authorized rate as permitted by the Louisiana Constitution and statutory law, the Council adopted Ordinance No. 1, setting forth the requisite adjusted maximum rate. Although Ordinance No. 2, setting forth the rate in *1158 crease as required by law (referred to as a roll forward), was set on the agenda, the Council deferred a vote on its adoption until a meeting scheduled for July 21, 2016. According to statements by council representatives at the July 7, 2016 meeting, the purpose of the deferment was to allow for further public comment.[1]
On July 8, 2016, the Parish issued a press release to all local media newspapers and broadcast media, notifying of the postponement of the Council’s vote on Ordinance No. 2 until the July 21, 2016 meeting in Gonzales. Additionally, “Notice of Public Hearing” statements were published on the laParish’s website and in the Gonzales Weekly Citizen, advising the public of a hearing on July 21, 2016 “to consider millage rates.”
The Council passed Ordinance No. 2 at the July 21, 2016 meeting after considerable input from the public. After submitting the requisite items for certification, in a letter dated August 3, 2016, the Parish was advised that the Legislative Auditor would not certify the 2016 increased millage rate. The Legislative Auditor’s stated reason for not certifying the increased millages was that the Parish had failed to properly comply with the legally required public notice.
The Parish subsequently filed this lawsuit, averring entitlement to a declaratory judgment declaring its procedure of adopting Ordinance No. 1 and Ordinance No. 2 was in compliance with law and an order directing the Legislative Auditor “to roll forward the millage.” Alleging that time was of the essence since “the tax rolls must be complete no later than September 8, 2016,” the Parish requested an expedited hearing. A hearing was held on October 24, 2016.[2] That same day, the trial court signed a judgment concluding that the Parish’s attempt to increase the 2016 millage rates was invalid and that the Legislative Auditor properly declined to certify the increase. The Parish devolutively appealed.[3]
^DISCUSSION
According to La. Const. Art. VII, § 23(B), following the implementation of *1159 the reappraisal and valuation required by La. Const. Art. VII, § 18(F), entitled “Reappraisal,” the millages as fixed in each such implementation shall remain in effect unless changed as permitted by Paragraph (C) of this Section.
Paragraph (C) of La. Const. Art. VII, § 28 states in pertinent part:
Increases permitted. Nothing herein shall prohibit a taxing authority from collecting ... in any subsequent year, a larger dollar amount of ad valorem taxes by ... levying additional or increased millages as provided by law.... Increases in the millage rate in excess of the rates established as provided by Paragraph (B) above but not in excess of the prior year’s maximum authorized millage rate may be levied by two-thirds vote of the total membership of a taxing authority without further voter approval but only after a public hearing held in accordance with the open meetings law; however, in addition to any other requirements of the open meetings law, public notice of the time, place, and subject matter of such hearing shall be published on two separate days no less than thirty days before the public hearing. Such public notice shall be published in the official journal of the taxing authority, and another newspaper with a larger circulation within the taxing authority than the official journal of the taxing authority, if there is one.
Further, La. R.S. 47:1705 provides in relevant part:
A All tax recipient agencies of ad valo-rem taxes of each and every parish of the state of Louisiana ... are hereby required to furnish the assessor and the legislative auditor the authorizing ordinances or resolutions and the tax rate to be applied to the assessed values for ad valorem tax purposes not later than June first of each year.,..
B. (l)(a) For any taxing authority with a governing authority membership which is elected by the voters, increases in the millage rate in excess of the rates established as provided by Article VII, Section 23(B) of the Constitution of Louisiana, but not in excess of the prior year’s maximum authorized millage rate may be levied by two-thirds vote of the total membership of a taxing authority without further voter approval but only after a public hearing held in accordance with the open meetings law....
(2) In order to accomplish this result, the following shall be mandatory:
(a) Each tax recipient body shall adopt an ordinance or resolution which shall set forth and designate the adjusted millage rate as required by Article VII, Section 23(B) of the Constitution of Louisiana.
|s(b) Each tax recipient body shall adopt another separate ordinance or resolution which shall provide for such millage rate increases by two-thirds vote and shall set forth and designate not only the increased millage rate but also the adjusted millage rate as required in Subparagraph (a) above and by Article VII, Section 23(B) of the Constitution of Louisiana.
(c)(i) In addition to any notice requirements provided for in Article VII, Section 23(C) of the Constitution of Louisiana and this Section, any tax recipient body which proposes to hold a public hearing in any tax year for the purpose of levying additional or increased millag-es on property without further voter approval shall publish, by the date provided for in Item (ii) of this Subpara-graph, public notice of the date, time, and place of the hearing. The notice shall contain a statement that the tax recipient body intends to consider at the hearing levying additional or increased millage rates without further voter approval ....
*1160 (ii)(aa) The notice shall be published, by July fifteenth, on two separate days, occurring no less than thirty days before the hearing date, in the official journal of the taxing authority, and in another newspaper with a larger circulation within the taxing authority than the official journal of the taxing authority, if there is one. On the first day of publication, the notice shall also be posted on the Internet website of the taxing authority, if such taxing authority maintains an Internet website....
(v) Failure to timely accomplish such [statutorily delineated] publication shall make the adoption at such a hearing of any resolution or ordinance providing for the - adoption of additional or increased millage null, void, and of no effect.
(f) ... [I]n the event that such a proposal was considered at the public hearing without action or vote, then any future public hearing to consider such proposal shall be advertised and publicized as required in this Subsection, except that no newspaper advertisement shall be required....
D. In order to carry out the mandate of Paragraph B of Section 28 of Article VII of the Constitution of Louisiana, the legislative auditor is hereby authorized and required to review the millages levied by each tax recipient body in-each year that reassessment occurs to determine whether the millages levied are in compliance with the provisions of this Section.and the [Constitution. The legislative auditor is also authorized and required to review the millages levied by each tax recipient body in each year in which an increase in millage is made by a two-thirds vote of the total membership of the taxing authority under the provisions of Paragraph C of Section 23 of Article VII of the Constitution of Louisiana, to determine whether the millage levied is in compliance with the provisions of this Section and the Constitution. The auditor shall or,der changes in the amount of millage levied if the auditor determines thereafter that a mathematical error or ^mathematical errors have been made in the calculation of the adjustment of millages as required by this Section' and the Constitution of Louisiana.
Acknowledging that Section 1705B requires thé .adoption of two separate ordinances by a tax recipient body to increase its millage rate in excess of the rates established by La. Const. Art. VII, § 23B by a two-thirds vote of its total membership, the Parish maintains' that nothing requires that the ordinances pass simultaneously and at the same public meeting. Since there is no requirement that both ordinances be adopted together and because Ordinance No. 1 was duly adopted at the July 7, 2016 meeting, the Parish contends the deferment of the vote on Ordinance No. 2 to the' July 21, 2016 meeting, which was advertised and publicized in accordance with Subsection B(2)(f), was proper.
In so contending, the Parish points to the term “proposal” and asks that in construing Subsection B(2)(f), this court interpret “proposal” to include “ordinance.” Thus, the Parish asserts since Ordinance No. 2 was considered at the July 7, 2017 public meeting without any action or vote by the Council, the subsequent notice it undertook conformed to the requirements of Subsection B(2)(f). As such, the Parish urges the Legislative Auditor improperly refused to certify its 2016 increased millag-es/roll forward since the Council passed two ordinances in conformity with the requirements -of Subsection B(2)(a) and (b) and properly complied with the notice provisions of Subsection B(2)(c) as to Ordinance No. 1 and to the abbreviated notice provisions of Subsection B(2)(f) as to Ordinance No. 2.
*1161 The Legislative Auditor offers a different interpretation of the provisions of Subsection 1705B. The Legislative Auditor does not dispute that the July 7, 2016 meeting conformed to the notice requirements of Subsection B(2)(c) or that after the July 7, 2016 meeting, the Parish published notice advertising and publicizing that the vote on Ordinance No. 2 was scheduled for July 21, 2016 in conformity with the provisions of Subsection B(2)(f). But the Legislative Auditor avers that the procedure undertaken by the Council does not allow the Parish to utilize the abbreviated notice requirements of Subsection B(2)(f).
Focusing on the use of the term “proposal” in Subsection B(2)(f), the Legislative Auditor contends that under the language of Subsection B(2)(a) and (b), “a proposal” to increase millages/roll forward necessarily includes two ordinances: one ordinance adjusting the millage rate and a second ordinance increasing the millage rate. The Legislative Auditor buttresses this contention with the language of Subsection B(2), which states “In order to accomplish this result [i.e., to increase mil-lages/roll forward], the following shall be mandatory.” (Emphasis added.) Since Ordinance No. 1—one of the two elements of the 2016 increased millages/roll forward proposal—was considered, voted upon, and adopted by the Council at the July 7, 2016 meeting, the Legislative Auditor asserts the abbreviated notice requirements of Subsection B(2)(f) are inapplicable because the Council acted on the proposal. The Legislative Auditor suggests that once Ordinance No. 1 was voted upon, the Parish was required to adhere to the full notice provisions set forth in Subsection B(2)(c) to properly conform to the statutory requirements. Thus, because the Parish failed to properly conform to the applicable statutory notice requirements, the Legislative Auditor maintains certification of the Parish’s 2016 increased millages/roll forward was correctly declined.
Initially, we note that this case presents a res nova issue of statutory interpretation. Neither “proposal” nor “ordinance” is a defined, term in La. R.S. 47:1705, the Louisiana Constitution, or Subtitle III of Title 47 of the Louisiana Revised Statutes (which sets forth the provisions relating to ad valorem taxes relative to Taxation and Revenue). According to Black’s Law Dictionary (10th ed. 2014), “proposal” means “[something offered for consideration or acceptance; l«a suggestion,” and “ordinance” means “[a]n authoritative law or decree.”. These definitions reveal that a proposal is not synonymous with an ordinance; however, they do not provide us with any additional guidance for a resolution of the proper construction of those terms as used by the legislature in La. R.S. 47:1705.
When the language of a .statute can reasonably be interpreted in more than one manner, courts must search deeper to discover the legislative intent. Burnette v. Stalder, 2000-2167 (La. 6/29/01), 789 So.2d 573, 577. As our supreme court explained in M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371 (La. 7/1/08), 998 So.2d 16, 26-27, amended on reh’g (9/19/08) (internal citations and quotation marks omitted):
The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law.
*1162 The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter.
If a statute can reasonably be interpreted more than one way, the interpretation less onerous to the taxpayer is to be adopted. Entergy Louisiana, Inc. v. Kennedy, 2003-0166 (La. App. 1st Cir. 7/2/03), 859 So.2d 74, 78, writ denied, 2003-2201 (La. 11/14/03), 858 So.2d 430.
Clearly, the heightened notice provisions enacted by the Legislature were for the protection of the taxpayers who will endure more onerous tax burdens created by decreased property valuation as a result of reappraisal should two thirds of a taxing authority vote to raise their millage rate to a level that would generate the same revenue as the prior year as permitted under La. Constitution art. VII, § 23(B) and (C).
Although the Parish’s construction of the word “proposal” as equivalent to or synonymous with “ordinance” in Subsection B(2)(f) is a plausible one, under Subsections B(2)(a) and (b), in order to increase millages/roll forward, a tax recipient body is mandated to adopt two ordinances “to accomplish this result.” Therefore, we find that the Legislative Auditor’s construction of a “proposal” as consisting of the two ordinances required under Subsection B(2)(a) and (b) is the proper interpretation. This construction expressly harmonizes Subsection B(2)(f) with Subsection B(2)(a) and (b). Moreover, in construing the term “proposal” in Subsection B(2)(f) as consisting of both of the mandated ordinances required in Subsections B(2)(a) and (b), taxpayers who are not provided the opportunity to vote on the increased millages/roll forwards are afforded with additional notice protections so as to allow input before the adoption of the increases.[4]
Accordingly, we conclude that once the Council adopted Ordinance No. 1, it acted on one element of the two-element proposal. Therefore, the proposal was considered and, by adopting Ordinance' No. 1, action was taken. Thus, the Parish was not within the ambit of the plain language of Subsection B(2)(f). Having] 1n failed to adhere to *1163 the notice provisions set forth in Subsection B(2)(c), the Parish did not comply with the statutory requirements, and under La. R.S. 47:1705(D), the Legislative Auditor properly declined to certify the Parish’s attempt in 2016 to increase mil-lages/roll forward.[5]
DECREE
The trial court’s judgment is affirmed. Appeal costs in the amount of $1,871.50 are assessed against plaintiff-appellant, the Parish of Ascension.
AFFIRMED.
Higginbotham, J. dissents on the grounds the appeal as moot.

. It is undisputed that the Council usually meets once a month in Donaldsville, the Parish seat of government, and once a month in Gonzales. Because the majority of the Parish's population resides east of die Mississippi River, the Council’s meetings in Gonzales are more convenient for the majority of the Parish's residents to attend.

. After the Legislative Auditor filed a declina-tory exception objecting on the basis that the Twenfy-Third Judicial District Court was an improper venue, the parties consented to a transfer of venue to' the Nineteenth Judicial District Court.

. In its motion for a devolutive appeal, the Parish alleged that "due to the deadlines associated with the certification of the tax rolls by the Ascension Parish Assessor, this requested appeal must be heard and decided ... by November 29, 2016.” But the Parish did not file a request in this court indicating the matter was required to have an expedited hearing date. To the extent that it appears the appeal may be moot in that the statutory deadlines for certification of the tax rolls of Ascension Parish for 2016 have passed, see La. R.S. 47:2126 (the assessor shall deliver to the tax collector the tax roll for the year in which taxes are collectible by November fifteenth); see also La. R.S. 2127(A) (taxes assessed shall be due in that calendar year as soon as the tax roll is delivered to the tax collector, and they shall be paid on or before December thirty-first in each respective year), the question of what constitutes proper notice is likely to present itself again, is an issue of clear public importance, and is almost invariably incapable of full litigation due to the inherently brief duration of taxation periods. Thus, this would be an instance of a challenged practice capable of repetition, yet evading review and, therefore, the appeal is properly before us. See Shepherd v. Schedler, 2015-1750 (La. 1/27/16), 209 So.3d 752, 765 (relying on State v. Rochon, 2011-0009 (La. 10/25/11), 75 So.3d 876, 884).

. Although the Parish asserts, and the record demonstrates, that the July 21, 2016 meeting was well attended by the public, that some notice was effective is not dispositive of the issue of whether the Parish complied with the requisite notice provisions of La. R.S. 47:1705. It is for the protection of not only those who attended the meeting but for those who did not attend that the Legislature enacted the notice provisions.

. The Parish’s reliance on City of Kenner v. Kyle, 2012-1262 (La. App. 5th Cir. 4/8/03), 846 So.2d 34, is misplaced. Unlike Kyle, which dealt with the Legislative Auditor's challenge of the constitutionality of the ordinance adopted by the tax recipient body, the matter before us is simply a question of whether the Legislative Auditor properly determined that the Parish was not in compliance with the provisions of La. R.S. 47:1705 as authorized and required to do under Subsection D. Since the Legislative Auditor does not contend that the procedure undertaken by the Parish in providing notice to the public for the July 21, 2016 meeting at which it adopted Ordinance No. 2 was unconstitutional, Kyle is inapposite.