ROLAND L. BELSOME, Judge.
■ | yThis .matter is before the Court on an appeal from a granting of summary judgment in favor of the plaintiff, the. Board of Commission of the Port of New Orleans, declaring that three properties owned by the Port are exempt from,ad valorem taxation. For the reasons .that follow, we affirm. ,

FACTS AND PROCEDURE

On March 19, 2013, the trial court awarded summary judgment to the Board of Commission of the Port 'of New Orleans (the “Port”), declaring that improvements to several properties owned by the Port along the Inner Harbor Industrial Canal in New Orleans are exempt from ad valorem taxation under Article VII, § 21(A) of the Louisiana Constitution, which confers an exemption on “public land” and “other public property used- for public purposes.” [1] Erroll Williams (the “Assessor”),in his capacity as Assessor for the Parish of Orleans, appealed to this Court, and a split panel granted his request to conduct additional discovery, thereby reversing and remanding to. the trial court without reaching the 12merits of the case.[2]- Follow *1284 ing remand, the Assessor conducted additional discovery and both parties, again, filed cross-motions for summary judgment. On May 28, 2015, the district court heard the motions for summary judgment and, again, granted judgment to the Port. The Assessor now appeals, and asks this Court to reverse the district court’s granting of summary judgment in favor of the Port, and instead award summary judgment in his favor.
The Port of New Orleans is a political subdivision of the State of Louisiana. At issue in this appeal are improvements located at the municipal addresses ‘of 3501 France Road, 4000 France Road Pkwy, and 4001 Alvar Street (collectively, the “Improvements”). The port owns the land and all of the improvements at each of these addresses. Generally speaking,, the Improvements consist.of warehouse buildings, office buildings, and other such improvements to the land, which, along with the land, are leased to two for-profit entities, the.Kearney Companies and Southern Intermodal Xpress (together, “the tenants”). During the term of their respective leases, both companies made leasehold improvements and/or repairs to the Improvements, and were assessed ad valo-rem taxes. The land itself; is not at issue and has not been assessed.
The Kearney Companies (“Kearney”) are engaged in various ■ businesses which are based on the movement of cargo through various ports. Kearney is leasing the land and improvements located at both 4000 France Road Parkway and 3501 France Road. Generally, Kearney supplies commodity warehousing, import deconsoli-dation, rail transloading, international freight forwarding, and import [acustoms house brokerage services. The record suggests that Kearney is. primarily-using the land and improvements at these locations for the deconsolidation and consolidation of cargo, the trans-loading of that cargo, and as its corporate offices.
• Southern Intermodal Xpress (“Intermo-dal Xpress”) is primarily engaged in the business of transporting intermodal containers. Intermodal Xpress leases the land and improvements at 4001 Alvar Street, where they handle the transportation of steamship containers by providing a transport cab and driver for the movement of these containers which have been, loaded onto chassis. Intermodal also provides a container yard for container storage on the leased property.
The trial court held that the Improvements owned by the Port and leased to the tenants are exempt from ad valorem taxation. In granting summary judgment to the Port, the court found that the activities of the tenants fit within the Port’s broad, legislating mission to maintain, develop, and promote the commerce and traffic of the port and harbor of New Orleans. See La. R.S. 34:21(A)(1). Ultimately, the court found that the lessees, through their leases, were obligated to fulfill the public purpose of the Port, i.e. — “contributing to the commerce of the Port of New Orleans,” and nothing in the additional discovery conducted by the Assessor indicated that the activities of the tenants were inconsistent with the Port’s mission.

ASSIGNMENT OF ERRORS

1. The .district court erred in granting the Port of New Orleans’ Motion for Summary Judgment and denying Assessor Williams’ cross-motion for summary judgment.
|t2. The district court erred in ruling that the Improvements are exempt from ad valorem tax assessments.

STANDARD OF REVIEW

We review the disposition of a motion for summary judgment de novo, using the *1285 same criteria that govern the district court’s determination of whether summary judgment is appropriate. See Bank of New York Mellon v. Smith, 2015-0530, p. 8 (La.10/14/15), 180 So.3d 1238, 1243 (citing Wright v. Louisiana Power & Light, 06-1181, p. 17 (La.3/9/07), 951 So.2d 1058, 1070; King v. Parish National Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545; Jones v. Estate of Santiago, 03-1424, p. 5 (La.4/14/04), 870 So.2d 1002, 1006).
Louisiana Code of Civil Procedure article 966(A)(3) provides that summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled .to judgment as a matter of law. Additionally, article 966(D)(1) provides that the burden of proof on motions for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). However, the burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not. entitled to judgment as a matter of law. Id.

DISCUSSION

The issue before this Court is whether the Improvements owned by the Port and leased to third-party, private, for-profit, commercial tenants are exempt from ad valorem taxation under' La. Const', art. VII, § 21(A). That article expressly provides that “public property used for public purposes” is exempt from ad valorem taxation. In interpreting this article, the Louisiana Supreme court has noted its broad language, and the framer’s regard for its simplicity and self-explanatory nature. See Slay v. Louisiana Energy and Power Authority, 473 So.2d 51, 53-54 (La. 1985).
As stated by. this Court in its recent decision remanding this case, jurisprudence interpreting La. Const. art. VII, § 21(A) 'has created a two-part test to determine the exemption status of such improvements on public property. See Bd. of Comm’rs of the Port of New Orleans v. City of New Orleans, 2013-0881, p. 6 (La. App. 4 Cir. 2/26/14), 135- So.3d 821, 825 (citing Slay, 473 So.2d 51, 53-54). Under this test, to be exempt from ad valorem taxation, public property must be (1) vested in or owned by the public, and (2) used for a public purpose.[3] See Slay, 473 So.2d at 53-54; Abundance Square v. Williams, 2010-0324, p. 10 (La.App. 4 Cir.2011), 62 So.3d 264, 266. It is the second part of this test on which this matter turns. Stated simply, the Assessor argues that the Improvements aré not exempt from ad valorem taxes because the property is leased to third-party, privately owned tenants who undertake commercial, for-profit activities that do not qualify as a “public purpose.”
Engaging in for-profit activities on public property does not preclude those activities from having a “public purpose.” In evaluating whether property is used for public purposes, “primarily the Legislature determines what is a public use, and when it has declared what may be so regulated, courts will not interfere except in cases of usurpation and abuse of authority.” Administrators of -. the Tulane Education Fund v. Bd. of Assessors, 38 La.Ann. 292, 297 (1886). Further, property has been held to have been utilized for a “public purpose” when property is either (1) dedicated and open,to.„the public, or (2) used in a way-that benefits,the |figeneral public. See St. Bernard I, LLC v. Williams, 2012-0372, pp. 7-9 (La.App. 4 Cir.3/13/13), 112 *1286 So.3d 922, 927-28 (La.App. 4 Cir.2018) (citing Abundance Square, 2010-0324, pp. 11-12, 62 So.3d 264, 266).
The Port argues, and the trial court found, that the exemption, here, hinges on the Port’s legislative purpose — that is, its authority to “regulate the commerce and traffic of the Port and Harbor of New Orleans, in such a manner as may, in its judgment, be best for he maintenance and development thereof.” See La. R.S. 34:21(A)(1).[4] In fact, the Board is a political subdivision of. the State of Louisiana, originally created by the Louisiana Legislature in Act 70 of 1896. Pursuant to La. R.S. 34:21 and La. R.S. 34:45, the. Legislature has conferred broad discretion and authority upon the Port to execute, its legislative mandates.[5] Accordingly, it leased the Improvements to Kearney[6] and Inter-modal Xpress,[7] both of whom were contractually obligated to ensure that all operations contributed to the commerce of the Port of New Orleans, thereby fulfilling the Port’s legislative mission.
|7In remanding this case, this Court ordered . that the district court examine “whether the specific activities conducted by The Kearney Companies and Southern Intermodal-Xpress serve a public purpose.” Bd. of Comm’rs of the Port of New Orleans v. City of New Orleans, 2013-0881, p. 10 (La.App. 4 Cir. 2/26/14), 135 So.3d 821, 827; see Abundance Square, 2010-0324, 62 So.3d 264.[8] Insofar as the trial court recognized the public- nature of the Port’s legislative charge, its reasoning is sound; however, it failed to review the individual activities of the tenants to determine whether they serve the “public purpose” contemplated by both the Port in leasing the-property to the lessees, and the Legislature in outlining the Port’s public mission. Nonetheless, we review this matter dé novo, and find that both Kearney and Intermodal Xpress are engaged in activities on the leaseholds that advance the Port’s legislative charge.
, As has been repeatedly noted in the long procedural history of this case, Kearney primarily uses the Improvements for the consolidation, deconsolidation, and trans-loading of cargo; commodity warehousing; *1287 international freight forwarding; and import customs and brokerage' services; while also maintaining their corporate offices on the leased property. On the other hand, Intermodal Xpress is engaged in the business of transporting (and, sometimes storing) intermodal, steamship containers. Specifically, Intermodal Xpress provides a transport cab and a driver, who “picks up” containers from the Port and transports them to various locations.
Generally speaking, the Port of New Orleans “offers services to industries that are mainstays of the Louisiana economy and are significant contributors to the |sregional economy.”[9] The Port connects producers with buyers, and helps bring commodities produced in our state to the global market.[10] Further, a healthy port generates local jobs and industry and associated local consumption, and attracts additional imports and exports, generating additional customs fees and demand for the Port’s services.[11] It is necessary to the health of the Port that vessels visiting the Port are afforded facilities and services — such as warehousing, freight forwarding, and intermodal transportation— that keep it competitive with rival ports across this country. In maintaining and developing the Port as such, the Board of Commissioners of the Port of New Orleans provides a great public benefit to the people of Louisiana.
As explained by Patrick Gallwey, Chief Operating Office of the Port of New Orleans, in his affidavit in connection with this lawsuit, the Port of New Orleans is what is referred to as “landlord port” that is, it relies on third-party lessees to fulfill its legislative mission by providing services that contribute: to the regulation, maintenance, development, and promotion of commerce and traffic :at the Port and Harbor of New Orleans. Mr. Gallwey explained that pursuant to its statutory authority, the Port leases the land and improvements, at issue, to Kearney and Intermodal Xpress for the provision of services that the Board has determined contribute to the fulfillment of this mission.[12] Before authorizing these leases through formal resolutions-of the Board, Gallwey ensured that the Board of Commissioners considered both .the need-for and the benefits of having the lessees’ services at the Port. He opined that without the services provided by the lessees, lathe Port would be a less, attractive option .for shippers and' others that use its resources for the transport of cargo. In fact, if the Port.was an “operational port,” instead of a “landlord port,” and did not lease these properties to Kear-ney, Intermodal Xpress, -and other similarly situated third parties, it would have to provide such services itself. -Under those circumstances, the property at issues would 'unquestionably- fall under the exemption as fulfilling public purpose; Accordingly, we find that the lessees’ activities on the Port’s. property further its public mission and satisfy the public purpose requirement of La. Const, art.'VII; § 21(A).
After being given the opportunity on remand to conduct additional discovery, the Assessor proffered new facts, which he avers preclude summary judgment in favor *1288 of the Port. Expressly, the record reflects that Kearney (through its corporate offices on the leased property) not only provides support services for business operations undertaken at the Port of New Orleans, but also provides similar services to the competitor ports of Savannah, Georgia and Saint Bernard, Louisiana. However, as clarified by David Kearney, the owner The Kearney Companies, one customer service person located in the corporate offices helps to manage a related business in Savannah, Georgia. Though transportation and warehousing of commodities is a highly competitive industry, Mr. Kearney clarified that shipping lanes often dictate which Ports are used — that is, depending on the steamship lines’ destination, it may be more cost effective for the commodity to ship through New Orleans' as opposed to Savannah, or vice, versa. Regardless, “a use of property by a private individual or corporation, when such Imuse is merely incidental to the public use of the property by the state or. its political subdivision, does not destroy an otherwise valid public purpose.” Pine Prairie Energy Center, LLC v. Soileau, 2014-5, p. 9 (La.App. 3 Cir. 6/11/14) 141 So.3d 367, 375; see also Att’y Gen Op. 89-599 WL 454531 (Dec. 7, 1989), at *2. Consequently) we find that, even considering the additional discovery elicited by the Assessor, the activities of the .lessees are in harmony with the Port’s legislative mission and provide a public benefit as outlined above.
. The Assessor cites to Schulingkamp v. Heaton, 455 So.2d 1181 (La.App. 4th Cir. 1984), for the position that public property leased for a private purpose is not tax exempt. While this Court did hold that private lessees of public land are not tax exempt when they have no public purpose, Schulingkamp is distinguishable from the present matter. Schulingkamp, 455 So.2d at 1183. In Schulingkamp, a private citizen leased a boathouse, situated on public grounds, as his principal residence. 455 So.2d at 1181. Unlike the Schulingkamp lessee, the tenants in the case sub judice are, at lease, arguably serving a public purpose relative to operation of a public port.
Additionally, the Assessor contends that the Port “continues to ignore its own Attorney General Opinion and its failed efforts to have the Louisiana Attorney general Reconsider his office’s long standing opinion in this matter,” referring to Opinion No. 96-320. However, the Attorney General stated in Opinion No. 96320, that public property, leased privately, can be exempt if it serves a governmental function, or is reasonably incidental to a government function, Att’y Gen Op. 96-320 (AUG. 5,1996).
Accordingly, there is ho genuine issue of material fact as to whether the lease improvements are subject to the exemption for ad valorem taxation provided | nby La. Const, art. VII, § 21(A). Therefore, the trial court’s granting of summary judgment in favor of the Board of Commissioners of the Port of New'Orleans is affirmed.
AFFIRMED

. Beginning with the 2011 tax year, the Assessor for the Parish of Orleans attempted to collect ad valorem taxes on the improvements located on the subject properties by issuing assessments to the third-party lessees of those properties. The Port is seeking a declaratory judgment that the land and improvements on these properties are exempt from ad valorem taxation.

. See Bd. of Comm'rs of the Port of New Orleans v. City of New Orleans, 2013-0881, p. 9-10 (La.App, 4 Cir. 2/26/14), 135 So.3d 821, 827 ("[W]e remand this matter to the trial court to allow the; parties additional time to complete the necessary discovery and to have a hearing on whether the specific activities conducted by The Kearney Companies and . Southern Intermodal Xpress serve a public purpose.”).

. It is not disputed that the leased property (and its improvements) are “owned by the public” — i.e., they are considered “public property.”

.La. R.S. 34:21, in pertinent part, provides:
A. (1) The Board of commissioners shall regulate the commerce and traffic of the port and harbor of New Orleans in such manner as may, in its judgment, be best for the maintenance and development thereof.
[[Image here]]
B. It shall be the duty of the board:
(1) To have 'charge of, and administer the public wharves, docks, sheds, and landings of the port ■ of New Orleans which are owned and operated, or which may be purchased, acquired, or operated by the board.
[[Image here]]

. Additionally, pursuant to La. R.S. 34:45, "[t]he [Board of Commissioners of the Port of New Orleans] shall have the power to lease for manufacturing, commercial, and business purposes lands acquired for the [Inner Harbor Navigational canal],” the canal along which the three properties at issue *are located.

. The lease agreement between the Port and Kearney provides, in part, that the “operations conducted on the Leased Premises shall contribute to the commerce of' the port of New Orleans,” and that the lessee “shall use the Leased Premises solely for the purpose of storing, handling, sorting and shipping of international and domestic cargos including lumber, paper products and general cargo operations associated therewith.”

. The lease agreement between the Port and Intermodal Xpress proves, in part, that "the operations conducted on the Leased Premises shall contribute to the domestic or foreign waterborne commerce of the Port of New Orleans,” and that, the lessee "shall use the Leased Premises solely for the purpose of marshaling trucks, intermodal containers and chassis.”

. See supra note 2 and accompanying text.

. See The Ports Association of Louisiana, "The Economic Impact of the Ports of Louisiana” (Mar. 2012), available at http://portsof louisiana.org. /wp-contenl/uploads/2012-final-report.pdf. A copy of this was made part of the record in this case.

. Id.

. See http://portno.com/about. . A copy of this was made part of the record in this case.

. See supra notes 5-6 and accompanying text.