| | | |
|---|---|---|
| UNIVERSITY OF NEW ORLEANS RESEARCH AND TECHNOLOGY FOUNDATION, INC. | * | NO. 2024-CA-0472 |
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| | * | |
| NORMAN WHITE CHIEF FINANCIAL OFFICER AND DIRECTOR OF FINANCE, CITY OF NEW ORLEANS; ERROLL G. WILLIAMS, ASSESSOR, ORLEANS PARISH; AND LAWRENCE E. CHEHARDY, CHAIRMAN, LOUISIANA TAX COMMISSION | STATE OF LOUISIANA |

* * * * * * *

CONSOLIDATED WITH:

UNIVERSITY OF NEW ORLEANS RESEARCH AND TECHNOLOGY FOUNDATION, INC.

VERSUS

NORMAN WHITE CHIEF FINANCIAL OFFICER AND DIRECTOR OF FINANCE, CITY OF NEW ORLEANS; ERROLL G. WILLIAMS, ASSESSOR, ORLEANS PARISH; AND LAWRENCE E. CHEHARDY, CHAIRMAN, LOUISIANA TAX COMMISSION

CONSOLIDATED WITH:

NO. 2024-CA-0473

**ATKINS, J., DISSENTS AND ASSIGNS REASONS.**

I respectfully dissent from the Majority Opinion. Contrary to the Majority, I find UNORTF did not meet its burden of proving entitlement to the exemption from *ad valorem* taxation found in La. Const. art. VII, § 21(A) for the 2022 and 2023 tax years. Instead, I find particular merit to Assessor Williams' assignment of error that "there is insufficient evidence in the record to prove that the activities at Subject Properties were conducted for a public purpose during the relevant time period." Accordingly, for the following reasons, I would reverse the BTA's June 14, 2024 judgment, which granted the *ad valorem* tax exemption to UNORTF for the 2022 and 2023 tax years.

Louisiana Constitution Article VII, Section 21 provides:

Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:

(A) Public lands and other public property used for public purposes.

In determining whether the above exemption from *ad valorem* taxation applies to a particular property, this Court has applied a two-pronged test. "The first prong is a determination as to whether the property is publicly or privately owned." *Filmore Parc Apartments II v. White*, 2024-0475, 0476, p. 17 (La. App. 4 Cir. 2/14/25), ___ So.3d ___, ___, 2025 WL 502045, at *9 (citing *Filmore Parc Apartments II v. Foster*, 2016-0568, pp. 4-5 (La. App. 4 Cir. 2/15/17), 212 So.3d 621, 624). Even if property is privately owned, however, one moves onto the second prong of the test to determine if the property is used for a public purpose. *Id.* (citing *Filmore Parc Apartments II*, 2016-0568, p. 5, 212 So.3d at 625). This is because "ownership alone is not the determining factor" in establishing entitlement to an exemption, such "that privately owned property may be dedicated to public use to attain tax exempt status." *Id.* When property is leased to for-profit tenants, entitlement to the *ad valorem* tax exemption depends on whether the individual tenants' activities "are in harmony with the" underlying public purpose upon which the lessor based its entitlement to the exemption. *Bd. of Comm'rs of Port of New Orleans v. City of New Orleans*, 2015-0768, p. 10 (La. App. 4 Cir. 3/16/16), 186 So.3d 1282, 1288.

This Court very recently delineated the standard of review and burden of proof in tax exemption cases. Regarding the standard of review, this Court explained, if "an appellate court reviews a decision issued by the BTA, the review must be 'rendered upon the record as made before the BTA and is limited to facts on the record and questions of law.'" *Filmore Parc Apartments II*, 2024-0475, 0476, p. 12, ___ So.3d at ___, 2025 WL 502045, at *6 (quoting *Ciervo v. Robinson*, 2020-1106, p. 3 (La. App. 1 Cir. 4/16/21), 323 So.3d 893, 896). When

"there is substantial evidence in the record to support" the BTA's findings of fact, then the appellate court "should not set aside the findings of fact 'unless they are manifestly erroneous in view of the evidence on the entire record.'" *Id. See also Barfield v. Bolotte*, 2015-0847, p. 5 (La. App. 1 Cir. 12/23/15), 185 So.3d 781, 785 (citing *Crawford v. Am. Nat'l Petroleum Co.*, 2000-1063, p. 6 (La. App. 1 Cir. 12/28/01), 805 So.2d 371, 377); *Bridges v. Offshore Drilling Co.*, 2010-2214, p. 7 (La. App. 1 Cir. 7/18/11), 69 So.3d 738, 742 (citation omitted). According to La. R.S. 47:1435(C), the appellate court has the power "to modify, or to reverse the decision or judgment of the board, with or without remanding the case for further proceedings" when the BTA's judgment "is manifestly erroneous on the facts considering the record as a whole."

Discussing the burden of proof in tax exemption cases in *Filmore Parc Apartments II*, this Court held "[e]xemptions from taxation are strictly construed" because they are considered "an exceptional privilege." 2024-0475, 0476, p. 16, ___ So.3d at ___, 2025 WL 502045, at *8 (quoting *Filmore Parc Apartments II v. Foster*, 2016-0568, p. 4 (La. App. 4 Cir. 2/15/27), 212 So.3d 621, 624). *See also Abundance Square Assocs., L.P. v. Williams*, 2010-0324, p. 5 (La. App. 4 Cir. 3/23/11), 62 So.3d 261, 263). Entitlement to an exemption "must be clearly, unequivocally, and affirmatively established." *Id.* Accordingly, a taxpayer attempting to establish entitlement to an exemption has the "stringent burden . . . to overcome the judicial fundamental principle that to doubt is to deny the exemption." *Filmore Parc Apartments II*, 2024-0475, 0476, p. 16, ___ So.3d at ___, 2025 WL 502045, at *8 (internal quotation marks omitted) (quoting *S. Yacht Club v. Zeno*, 2012-1309, p. 10 (La. App. 4 Cir. 3/27/13), 112 So.3d 942, 948). In light of the foregoing, "Louisiana jurisprudence has consistently held that constitutional and statutory grants of exemption from taxation must be strictly construed in favor of the taxing body and against the taxpayer desiring the

3

exemption." *Id.* Thus, in this case, UNORTF bore the stringent burden of clearly, unequivocally, and affirmatively establishing it was entitled to the *ad valorem* tax exemption found in La. Const. art. VII, § 21(A). Looking at the first prong of the test, there is no dispute in this matter that the subject property is privately held by UNORTF. Next, the second prong requires a determination as to whether, despite the property's private ownership, it is entitled to the exemption because UNORTF proved the property is dedicated to a public purpose.

The Majority explains UNORTF's formation and mission as follows:

UNORTF was formed in 1997 as a Section 501(c)(3) nonprofit corporation. According to UNORTF's articles of incorporation, its purposes were to support programs, facilities and educational and research opportunities offered by UNO; to promote, expand and improve the university's curricula and programs; to provide greater educational opportunities; and to encourage teaching, research, and scholarship. UNORTF's mission also includes attracting new industry to the community, encouraging the development of or retention of an industry in the community; promoting the development of high technology industries and research; increasing employment opportunities; promoting cooperation between the public and private sector with respect to research and development; and to create, develop, construct, manage and finance one or more research and technology parks. The [L]egislature outlines the public purpose served by research and technology parks that support public universities in La. R.S. 17:3389(a). The City of New Orleans Code of Ordinances, Chapter 150, Article VI, Division 3, Section 150-538 recognizes that a research and technology park authorized by the legislature serves a public purpose.

As referenced therein, at the time period relevant to this case, La. R.S. 17:13889(a) stated:[1]

The legislature finds that development of research and development parks in association with public or regionally accredited independent universities in the state, with quality facilities for research and development, manufacturing of goods resulting from and related to research and development activities, and related support services and concerns, will benefit the citizens of Louisiana through improved scientific information and technology and through improved economic conditions and creation of jobs. It is the intent of this Section to provide for the reduction in taxes which would otherwise be payable by concerns which conduct such enterprises and activities in order to encourage their location in such park areas and to provide

---

[1] I note the Legislature repealed La. R.S. 17:3389 in 2024.

4

them with greater resources which may be used for further development and economic activity which will further expand the capabilities of the concerns located in such parks.

The Majority finds the Legislature has "broadly defined the public purpose and public use of the research and technology parks" in the first sentence of the above quote from La. R.S. 17:3389(a). While I do not disagree with that statement, I find problematic the Majority's position that "it is the activities of UNORTF, not the tenants, that must be examined to determine if UNORTF complied with the [L]egislature's directives," such that it was sufficient for Ms. Conwell to testify "(1) how UNORTF and UNO screened tenants to assure the tenants would be 'in harmony' with UNORTF's legislative mission; and (2) how UNORTF monitored the activities of the tenants to bring about as much collaboration with UNO as possible."

To hold, as the Majority does, that only UNORTF'S activities matter, not its tenants', ignores the fact that a university research and development park like UNORTF is defined by its tenants. That is, whether a university research and development park like UNORTF actually—in practice rather than in theory—serves the public purpose and public use defined by the Legislature in La. R.S. 17:3389(a) hinges on the activities that occur there. Under the Majority's holding, an entity like UNORTF could set itself up as a university research and development park; lease space to tenants that do not further the park's public purpose in accordance with La. R.S. 17:3899(a); and obtain a tax exemption by merely providing testimony that they screened for tenants in harmony with the legislative mission of a university research and technology park and monitored the tenants' activities for same—without offering proof as to whether it has come to fruition that the tenants' activities do in fact bolster that public purpose and mission. This would allow a university research and technology park to obtain the benefit of a tax exemption without actually furthering the public purpose for which

the Legislature deemed such parks should be entitled to the exemption. Further, I find this stance contrary to *Bd. of Comm'rs of Port of New Orleans*, wherein this Court held the trial court erred in "fail[ing] to review the individual activities of the tenants to determine whether they serve the 'public purpose' contemplated by both the Port in leasing the property to the lessees, and the Legislature in outlining the Port's public mission." 2015-0768, p. 7, 186 So.3d at 1286.

In support of their entitlement to the *ad valorem* tax exemption, UNORTF introduced rental information for one tenant, Hancock Whitney Bank ("Whitney"), including Whitney's 2014 lease application; its original 2014 lease; and a 2015 amendment to the lease. As the BTA recognized in its reasons for judgment, "No other applications or leases were offered." Additionally, UNORTF introduced its meeting minutes from 2008, which referenced a presentation given by Technology Associates ("TAI"), that recommended TAI become a tenant (TAI ultimately did become a tenant). UNORTF offered no documents related to its other tenants into evidence, yet UNORTF had fourteen tenants in 2022 and twenty-one tenants in 2023. Further, UNORTF offered no documentary evidence pertaining to its tenants' actual activities in the subject tax years, 2022 and 2023. In terms of testimony, UNORTF's CFO, Mr. Pitman, testified he worked for the CPA firm, Kissee & Company ("Kissee"), which was a tenant for tax year 2023 and prepared tax returns for mostly private clients, such as restaurants and insurance companies. Mr. Pitman also testified that Kissee was not involved in any research or technology at the Subject Properties. Regarding the parking garage, UNORTF likewise offered no rent rolls or any other documents, but trial testimony showed that the Navy reserved approximately 400 of 700 parking spaces for an unknown purpose. Testimony also established UNORTF did not monitor the parking garage and did not know who else used the parking garage during the subject tax years.

6

While reviewing the record in this appeal and the evidence—or lack thereof—presented by UNORTF in its attempt to establish entitlement to the *ad valorem* tax exemption, I am mindful of the fact that as an appellate court, we are "a court of record and can only review what is contained in the record on appeal." *Bankers Ins. Co. v. EMIII Holdings, LLC*, 2024-0386, p. 29 (La. App. 4 Cir. 12/16/24), ___ So.3d ___, ___, 2024 WL 5116650, at *13 (internal quotation marks omitted) (quoting *PRCP-NS New Orleans, LLC v. Swanson*, 2022-0393, p. 17 (La. App. 4 Cir. 12/16/22), 354 So.3d 239, 249). Simply put, without more documentary evidence or admissible testimony about the tenants' activities for the subject tax years, the record on appeal reveals UNORTF failed to prove the activities undertaken at the property were for the public purpose defined by the Legislature in La. R.S. 17:3389(a). I find the substance of the documentary evidence and testimony presented did not amount to UNORTF clearly, unequivocally, and affirmatively establishing entitlement to the *ad valorem* tax exemption. Moreover, I note the Majority observes that Ms. Conwell's testimony about screening tenants and monitoring their activities was uncontradicted, such that this was a finding of fact that cannot be overturned. This position diminishes the burden of proof on the taxpayer: just because evidence or testimony is uncontradicted does not mean it sufficiently supports entitlement to the exemption, particularly under the stringent burden of proof required in a tax case like this.

In light of the foregoing, I find UNORTF failed to meet its stringent burden of proving entitlement to the exemption from *ad valorem* taxation because it failed to demonstrate that its tenants' activities and the parking garage served the public purpose established by the Legislature in La. R.S. 17:3389(a). Thus, in accordance with the power given to this Court by La. R.S. 47:1435(C), I would reverse the BTA's June 14, 2024 judgment because I find it "manifestly erroneous on the facts considering the record as a whole."